THE STATE OF NEW JERSEY v. NEW JERSEY TRADE WASTE ASSOCIATION, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Somerset County

Decided July 25, 1983.

*Joseph P. Ambrosio* for defendants Anthony Scioscia and Home & Industrial Disposal Service (*Michael A. Cohen,* attorney).

*Robert D. Ford* for defendants Louis Spiegel and Inter County Refuse Co., Inc. (*Vincent J. Dotoli,* attorney).

*James C. Heimlich* for defendant John M. Gentempo.

*Gerard C. Sims,* Jr., Deputy Attorney General, for the State of New Jersey (*Irwin I. Kimmelman,* New Jersey Attorney General, attorney).

MEREDITH, J.S.C.

The New Jersey Antitrust Act, *N.J.S.A.* 56:9–1 *et seq.,* provides that "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, in

this State, shall be unlawful." *N.J.S.A.* 56:9–3. Under an indictment dated October 17, 1980 fifty-seven individuals, partnerships and corporations were charged with a violation of this statute in that they "knowingly engaged in a combination and conspiracy in unreasonable restraint of the business of providing garbage collection service to customers in the relevant area." The indictment was dismissed as to several defendants, and several others were severed for trial. With the exception of eight defendants tried before a jury earlier this year, all the rest entered into plea agreements with the State, under which they pled guilty to a provision of the Solid Waste Utility Control Act of 1970, *N.J.S.A.* 48:13A–10 a. Of the eight defendants who went to trial, four were convicted and mistrials were declared as to the other four, the jury having been unable to reach a verdict as to their guilt or innocence. Those who were found to be guilty are Anthony Scioscia, Home & Industrial Disposal Service, Louis Spiegel, and Inter County Refuse Service, Inc. These defendants move for an order declaring the interdict provision of the New Jersey Antitrust Act to be unconstitutional. Joining in the motion are two defendants as to whom mistrials were declared, and who face retrial on the charge, Browning-Ferris Industries of Elizabeth, Inc., and John M. Gentempo.

█ The criminal penalty provision of the New Jersey Antitrust Act reads as follows:

a. Any person or corporation, or any officer or agent thereof, who shall knowingly violate any of the provisions of this act or aid or advise in such violation, or who, as principal, manager, director, stockholder owning 10% or more of the aggregate outstanding capital stock of all classes of the corporation, agent, servant or employee, knowingly does any act comprising a part of such violation, is guilty of a misdemeanor and shall be punished by imprisonment for not more than 3 years or by a fine of not more than $50,000.00 or both; and if a corporation by a fine of not more than $100,000.00.

b. Any person convicted pursuant to the provisions of subsection a of this section is hereby denied the right and is hereby prohibited from managing or owning any business organization within this State, and from serving as an officer, director, trustee, member of any executive board or similar governing body, principal, manager, stockholder owning 10% or more of the aggregate

outstanding capital stock of all classes of any corporation doing business in this State, and all persons within this State, are hereby denied the right to handle the goods of or in any manner deal with, directly or indirectly, those persons, companies or corporations under the interdict specified herein. All persons knowingly violating any of the provisions of this section, either directly or indirectly, or aiding or abetting directly or indirectly in any violation of any provisions of this section, shall be deemed guilty of a misdemeanor and shall be fined not less than $100.00 nor more than $1,000.00 and shall be punished by imprisonment for not less than 30 days nor more than 6 months, and shall forfeit not less than $1,000.00 for each and every day such violation may continue, to be collected by a summary proceeding in a court of competent jurisdiction.

*N.J.S.A.* 56:9–11. Section (b) of this statute is called the interdict provision. Although the Attorney General asserts and the defendants would no doubt gladly concur that the interdict does not apply to corporations but only to individuals,* this interpretation is not supported by the language of the statute. In *N.J.S.A.* 56:9–2, the term "person" is specifically defined to include corporations, partnerships and companies. Furthermore, the interdict states that all persons are prohibited from dealing with "persons, companies, or corporations under the interdict specified herein." The explicit intention was that corporations and other companies be subject to the interdict. Therefore, all the defendants convicted at trial as well as those joining the motion are concerned here. In this regard the opinion of the Attorney General is of no consequence. The imposition of the interdict is mandatory once a criminal conviction under the statute is obtained. The State cannot influence its imposition except by deciding to proceed under a different statute or under the civil provisions of the Antitrust Act. Obviously, the court as well is denied any exercise of discretion in the matter of the

---

*For this proposition, *State v. Lawn King,* 152 *N.J.Super.* 333, 341 (Law Div.1977), rev'd on other grounds, 169 *N.J.Super.* 346, 348 (App.Div.1979), aff'd 84 *N.J.* 179 (1980), is cited. The Law Division court in that case declared that "the interdict of *N.J.S.A.* 56:9–16 does not apply [to the corporate defendant], since its application is limited to individual defendants." *N.J.S.A.* 56:9–16 reads as follows: "The remedies provided in this act shall be cumulative." Neither this section nor the interdict provision has been amended since their effective date of May 21, 1970. The reviewing courts in the *Lawn King* case did not address the question of the applicability of the interdict.

interdict. Its prohibitions are automatically imposed regardless of the circumstances of any particular offense and irrespective of the defendant's prior criminal record or lack thereof.

The interdict provision imposes an extraordinary penalty, incapable of clear comparison to the usual sentences of fines, incarceration or to the ultimate penalty, a sentence of death. The State characterizes the interdict as a "collateral consequence" to a conviction, implying that its prohibition is a penalty less severe than incarceration. The interdict is in fact a most severe and extreme solution to the problem of deterring future antitrust violations. Unlike most prison sentences, this punishment is perpetual. It is effective upon a single violation of the statute. It implicitly rejects the concept of rehabilitation or reform, one of the purposes of the criminal code of the State and therefore among the goals recognized and adopted by the legislature. *N.J.S.A.* 2C:1-2.

The State likens the interdict to a delicensing measure, which regulations have frequently been upheld by the courts. This statute not only prevents an individual from participating in a licensed profession, since those convicted of a crime are generally excluded from such practice, but also extends to prohibiting involvement in any business at a management or ownership level, for the rest of the defendant's life. The alternatives left to those convicted under the statute are few. They may take jobs as laborers, at probably substantially reduced income; they may be eligible to work for a labor union; or they may, of course, leave the state and start over. A defendant who takes a job in the state is forever barred from promotion or advancement and is prevented from using his earnings to obtain a significant interest in a business enterprise. The statute deprives individuals of the right to apply their skills and abilities to better themselves and to provide for themselves and their families in the best way they are able.

"In New Jersey, the right to obtain gainful employment and to use the fruits of such labor to acquire property has

traditionally been considered basic." *Peper v. Princeton University Board of Trustees,* 77 *N.J.* 55, 77 (1978). The right to earn a livelihood is a property right which is guaranteed by the Fifth and Fourteenth Amendments to the Federal Constitution, and by the State Constitution. *Greene v. McElroy,* 360 *U.S.* 474, 492, 79 *S.Ct.* 1400, 1411, 3 *L.Ed.2d* 1377 (1959); *Lane Distributors, Inc. v. Tilton,* 7 *N.J.* 349 (1951); *Carroll v. Local No. 269, Int'l Brotherhood of Electrical Workers,* 133 *N.J.Eq.* 144 (Ch. 1943). The right of a person to engage in a business of his choice should be protected against arbitrary or unreasonable interference by the State. *Greene v. McElroy, supra,* 360 *U.S.* at 492, 79 *S.Ct.* at 1411; *Lane Distributors, Inc. v. Tilton, supra,* 7 *N.J.* at 362. The use of property is subject to regulation in the common interest and, of course, there is no right to conduct a business so as to injure the public. *Nebbia v. New York,* 291 *U.S.* 502, 54 *S.Ct.* 505, 78 *L.Ed.* 940 (1934). Thus, legislation preventing injurious practices is valid so long as it does not violate a specific constitutional provision or contradict a federal law, *Ferguson v. Skrupa,* 372 *U.S.* 726, 730–31, 83 *S.Ct.* 1028, 1031, 10 *L.Ed.2d* 93 (1963), and when it bears a reasonable relationship to the protection of the public health, morals, safety or welfare. This "police power" of the State extends to protection from economic harm. *Lane Distributors, Inc. v. Tilton, supra,* 7 *N.J.* at 362, 365–66. For these reasons, statutes prohibiting monopolizing or restraining trade are completely valid.

The courts of New Jersey have characterized the right freely to engage in a lawful business or occupation as unalienable, however, and subject only to such restrictions as may result from the exercise of equal or superior rights of others, such as the right of fair competition. *Peper v. Princeton University Board of Trustees, supra,* 77 *N.J.* at 77, quoting *Brennan v. United Hatters of North America, Local No. 17,* 73 *N.J.L.* 729, 742 (E. & A.1906). While this supports an enactment declaring anticompetitive practices to be unlawful, a giant leap must be made to the conclusion that the interdict is a valid regulation protecting the right of fair competition.

■ Indeed, the right to earn a livelihood is regarded to be so basic as to limit the enforcement by the courts of covenants not to compete. Such an agreement standing alone is viewed as illegal and contrary to public policy. 6A *Corbin on Contracts* (1962) §§ 1379–1384. If an agreement not to compete constitutes only one part of a legitimate transaction it will be enforced by the courts only to the extent that it is reasonable in terms of duration and geographical area, and imposes no undue hardship. *Ibid.; Voices, Inc. v. Metal Tone Mfg. Co., Inc.,* 119 *N.J.Eq.* 324 (Ch. 1936), aff'd, 120 *N.J.Eq.* 618 (E. & A.1936), *cert. den.,* 300 *U.S.* 656, 57 *S.Ct.* 433, 81 *L.Ed.* 866 (1937); *Rubel & Jensen Corp. v. Rubel,* 85 *N.J.Super.* 27, 35 (App.Div.1964). Thus, the courts frequently decline to enforce overbroad restraints on business activity even when they were apparently voluntarily entered into. 6A *Corbin, supra,* §§ 1379–1396.

■ The apparent purpose of the interdict is to prevent future antitrust violations by those who have shown a propensity to engage in anticompetitive practices. Unlike a recidivist statute under which enhanced· and sometimes drastic penalties may be imposed, the interdict represents the conclusion on the part of the Legislature that an individual who has committed a single, isolated unlawful act cannot be trusted to learn from his experience and obey the law in the future. Considering the essential nature of the right so severely limited, such a conclusion seems unwarranted. It is the role of the legislature, however, and not the courts, to regulate professions and trades and to prescribe penalties for criminal activity. "Debatable questions as to the reasonableness of means [of enforcement of statutory goals] are for the Legislature, not the courts." *Frazier v. Liberty Mutual Insurance Co.,* 150 *N.J.Super.* 123, 134 (Law Div.1977). *See Sanitary Vendors, Inc. v. Byrne,* 40 *N.J.* 157, 166 (1963). The function of the courts is to review legislative enactments to determine their constitutionality. In this endeavor, the court must be mindful of the strong presumption that a statute is constitutional. *See e.g. Gregg v. Georgia,* 428 *U.S.* 153, 175, 96 *S.Ct.* 2909, 2926, 49 *L.Ed.*2d 859 (1976), reh. den., 429

*U.S.* 875, 97 *S.Ct.* 197, 50 *L.Ed.*2d 158 (1976); *Frazier v. Liberty Mutual Insurance Co., supra,* 150 *N.J.Super.* at 130.

 Defendants assert that the interdict provision violates the Eighth Amendment proscription against cruel and unusual punishment. The amendment reads as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." A similar provision appears in the *N.J. Const.* (1947), Art. 1, par. 12. The cruel and unusual punishment clause protects those convicted of crimes by subjecting three matters to parallel limitations: bail, fines, and punishment. *Ingraham v. Wright,* 430 *U.S.* 651, 664, 97 *S.Ct.* 1401, 1408, 51 *L.Ed.*2d 711 (1977). It limits the conduct which may be made criminal and the kinds of punishment which can be imposed, and further proscribes grossly disproportionate punishments. *Id.,* 430 *U.S.* at 667, 97 *S.Ct.* at 1410. Thus it is well established that the Eighth Amendment prohibits not only barbaric punishments but also sentences that are disproportionate to the crime committed. *Solem v. Helm,* —— U.S. ——, ——, 103 *S.Ct.* 3001, 3005–3006, 77 *L.Ed.*2d 637 (1983); *Hutto v. Finney,* 437 *U.S.* 678, 685, 98 *S.Ct.* 2565, 2570, 57 *L.Ed.*2d 522 (1978), reh. den., 439 *U.S.* 1122, 99 *S.Ct.* 1035, 59 *L.Ed.*2d 83 (1979); *Gregg v. Georgia, supra,* 428 *U.S.* at 173, 96 *S.Ct.* at 2925.

The primary purpose of the amendment has "always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes . . . ." *Ingraham v. Wright, supra,* 430 *U.S.* at 667, 97 *S.Ct.* at 1410, quoting *Powell v. Texas,* 392 *U.S.* 514, 531–32, 88 *S.Ct.* 2145, 2154, 20 *L.Ed.*2d 1254 (1968) (plurality opinion), reh. den., 393 *U.S.* 898, 89 *S.Ct.* 65, 21 *L.Ed.*2d 185 (1968).

 Any criminal penalty, however, is subject to Eighth Amendment analysis, whether it be a fine, a sentence of incarceration or death, or the interdict provision here challenged. As the United States Supreme Court recently declared, "It would be anomalous indeed if the lesser punishment of a fine and the

greater punishment of death were both subject to proportionality analysis, but the intermediate punishment of imprisonment were not." *Solem v. Helm, supra,* ―― U.S. at ――, 103 *S.Ct.* at 3009. Surely the interdict has a place in this spectrum between fine and execution.

The *Solem* decision makes clear that "outside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare." At ――, 103 *S.Ct.* at 3009, citing *Rummel v. Estelle,* 445 *U.S.* 263, 272, 100 *S.Ct.* 1133, 1138, 63 *L.Ed.*2d 382 (1980). While the Court noted that substantial deference should be paid to the "broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes," *Solem v. Helm, supra,* ―― U.S. at ――, 103 *S.Ct.* at 3009, three objective factors were enunciated as guides in reviewing sentences under Eighth Amendment challenge. First, the gravity of the offense and the harshness of the penalty should be considered. Second, the sentences imposed on other criminals in the same jurisdiction should be compared to the sentence under review. "If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Ibid.* Third, it may be useful to compare the sentences imposed for commission of the same crime in other jurisdictions. The court concluded in *Solem* that a life sentence without possibility of parole was significantly disproportionate to the defendant's crime of uttering a "no account" check for $100.00. The defendant had been convicted of six prior nonviolent felonies and was sentenced under South Dakota's recidivist statute. The Supreme Court distinguished the earlier case of *Rummel v. Estelle, supra,* which involved similar facts and the Texas recidivist statute. In that case, a mandatory life sentence was imposed for the defendant's third nonviolent felony but parole remained a possibility. While recognizing that the defendant had no enforcible right to parole, the court considered that "a proper assessment of Texas' treatment [of the defendant] could hardly ignore the possibility that he will not actually

be imprisoned for the rest of his life." That sentence was found not to violate the constitution.

The offense of which defendants have been found guilty in the instant case is classified as a misdemeanor. It is a crime, and not a petty offense. The defendants participated in a conspiracy to restrain trade, an agreement which by its nature is inimical to our system of free enterprise. The conspiracy involved a large number of people who have otherwise led exemplary lives. The problem in many conspiracy prosecutions is that several individuals may be convicted of the same offense when their respective degrees of involvement in the scheme may differ widely. In the conspiracy involved here, it may be that several of the individuals conceived and established the conspiratorial scheme and that many of the others participated because they felt they had no choice. This makes them no less guilty of the offense but it surely must affect the determination of a fair and effective sentence. Thus, even among those defendants convicted of the same crime there are distinctions to be made regarding the gravity of the offense.

As noted above, the penalty of the interdict is severe and extreme. In *Weems v. U.S.,* 217 *U.S.* 349, 30 *S.Ct.* 544, 54 *L.Ed.* 793 (1910), the defendant successfully attacked the imposition of a punishment known as *"cadena temporal"* for the crime of falsifying a public record. The crime was "apparently complete upon the knowing entry of a single item of false information in a public record," even if no fraud was intended, no one was injured, and the perpetrator gained nothing through the offense. *Rummel v. Estelle, supra,* 445 *U.S.* at 273, 100 *S.Ct.* at 1139. The mandatory penalty for this offense was confinement, chained at the ankle and wrist, and hard and painful labor, for a period of 12 years. Subsequent to this imprisonment, and for the remainder of his life, the offender was required to obtain from the authorities permission to change his domicile, a perpetual limitation of his liberty. The Court in *Weems* held the combination of the length of imprisonment and the "accessories" to that penalty to be cruel and unusual punishment. *Weems*

involved indisputably extreme circumstances but the Court endorsed in that case the concept of proportionality as a constitutional standard. *See. Solem v. Helm, supra,* —— *U.S.* at ——, 103 S.Ct. 3007–3008, 3009.

The interdict provision by no means approaches the barbarity of *cadena temporal.* However, its prohibition is similar to the civil disabilities attendant upon that punishment, in that it subjects a defendant to perpetual surveillance by the authorities. Considering the potentially minor involvement of any one defendant with the crime charged, the penalty of the interdict must be viewed as extremely harsh.

The second factor recommended in *Solem* is a comparison of penalties imposed upon other criminals in the jurisdiction. An examination of several New Jersey statutes is illuminating.

Under *N.J.S.A.* 2C:51–2 d, a provision characterized by the State's brief as "similar in design and scope to the antitrust interdict," certain individuals who have been convicted of bribery, official misconduct, and other similar offenses are ineligible to do business with public entities for up to ten years. The section reads in full as follows:

> d. Except as may otherwise be ordered by the Attorney General as the public need may require, any person convicted of an offense under sections 2C:27–2, 2C:27–4, 2C:27–6, 2C:27–7, 2C:29–4, 2C:30–2, or 2C:30–3 of this Title shall be ineligible, either directly or indirectly to submit a bid, enter into any contract, or to conduct any business with any board, agency, authority, department, commission, public corporation, or other body of this State, of this or one or more other states, or of one or more political subdivisions of this State for a period of, but not more than, 10 years from the date of conviction for a crime of the second degree, or 5 years from the date of conviction for a crime of the third degree. It is the purpose of this subsection to bar any individual convicted of any of the above enumerated offenses and any business, including any corporation, partnership, association or proprietorship in which such individual is a principal, or with respect to which such individual owns, directly or indirectly, or controls 5% or more of the stock or other equity interest of such business, from conducting business with public entities.
>
> The State Treasurer shall keep and maintain a list of all corporations barred from conducting such business pursuant to this section.

It is significant to note that certain of the crimes punishable under this statute involve both potential subversion of the free

enterprise system and in addition a threat to the integrity of our democratic political system. For instance, a bribe given to an official in exchange for a favorable vote for the award of a public contract eliminates free competition and constitutes a breach of the public trust in the fairness of our processes. While a bribe differs from a conspiracy in that the latter may involve ongoing activity, it should be noted that the crime of conspiracy is complete when the agreement is made, and further that only a very slight connection need be proven beyond a reasonable doubt between any one defendant and the conspiracy. Yet the defendant convicted under the Antitrust Act is subjected to broad and permanent disabilities while the defendant convicted of bribery is penalized far less severely.

This statute bears some resemblance to the antitrust interdict in that it concerns a limitation on the right of certain persons to do business. The resemblance ends at that point, however. Under *N.J.S.A.* 2C:51–2 d, only dealings with public entities are involved. The individual is not deprived of his livelihood because he can continue to function in the business world. Furthermore the sanction may be imposed for only 10 years at the maximum. This is a far cry from the perpetual prohibition embodied in the provision here challenged.

A section of the Consumer Fraud Act provides as follows:

Whenever it shall appear to the Attorney General that a person has engaged in, is engaging in or is about to engage in any practice declared to be unlawful by this act he may seek and obtain in a summary action in the Superior Court an injunction prohibiting such person from continuing such practices or engaging therein or doing any acts in furtherance thereof or an order appointing a receiver, or both. In addition to any other remedy authorized herein the court may enjoin an individual from managing or owning any business organization within this State, and from serving as an officer, director, trustee, member of any executive board or similar governing body, principal, manager, stockholder owning 10% or more of the aggregate outstanding capital stock of all classes of any corporation doing business in this State, vacate or annul the charter of a corporation created by or under the laws of this State, revoke the certificate of authority to do business in this State of a foreign corporation, and revoke any other licenses, permits or certificates issued pursuant to law to such person whenever such management, ownership, activity, charter authority license, permit or certificate have been or may be used to further such unlawful practice.

The court may make such orders or judgments as may be necessary to prevent the use or employment by a person of any prohibited practices, or which may be necessary to restore to any person in interest any moneys or property, real or personal which may have been acquired by means of any practice herein declared to be unlawful.

*N.J.S.A.* 56:8–8. This statute contains language similar to that in the antitrust interdict except that the penalty is not mandatory and is phrased in terms of injunction. This is not a criminal statute, but rather provides civil remedies which may be imposed for acts declared to be unlawful. Because this is not a punishment for a crime it is not subject to Eighth Amendment analysis. *See, Trop v. Dulles,* 356 *U.S.* 86, 94–99, 78 *S.Ct.* 590, 594–97, 2 *L.Ed.*2d 630, 638–41 (1957); *In re Quinlan,* 70 *N.J.* 10, 37 n. 6 (1976), *cert.* den. *sub nom., Garger v. New Jersey,* 429 *U.S.* 922, 97 *S.Ct.* 319, 50 *L.Ed.*2d 289 (1976). The penalty is no less severe when imposed in the discretion of the court, but the State's reliance upon this civil statute as support for the antitrust interdict is misplaced.

Of perhaps greatest significance in this inquiry is the statute under which many of the defendants in this case entered pleas of guilty, that is, *N.J.S.A.* 48:13A–10 a. A part of the Solid Waste Utility Control Act of 1970, *N.J.S.A.* 48:13A–1 *et seq.,* the statute provides that no person or corporation shall monopolize or attempt to monopolize or combine or conspire to monopolize any trade or commerce in New Jersey pertaining to the solid waste collection or disposal business. It contains no interdict provision. The antitrust statute prohibits conspiracies to restrain trade in the state. Both statutes forbid similar activity, although the Antitrust Act is broader in its terms. The penalties specified under the two provisions are identical except for the interdict provision. Thus, two persons guilty of the same offense, one convicted under the Solid Waste Act and one under the Antitrust Act, are subjected to very different penalties.

A comparison of the interdict penalty to those imposed for a completely different crime is difficult but can to some degree be helpful. Our criminal homicide statute permits the imposition of the death penalty for murder in certain limited circumstanc-

es. When death is found not to be warranted, a person convicted of murder, a crime of the first degree, may be sentenced by the court to a term of 30 years without parole or to a term between 30 years and life imprisonment, with a minimum of 30 years to be served before eligibility for parole. N.J.S.A. 2C:11–3. Thus, even in the case of this most serious crime, involving the knowing or purposeful taking of a human life, it is contemplated that at some point the defendant may be eligible to return to society without continuing disability. This statute recognizes that in nearly every case there is some possibility of rehabilitation or reform of the defendant and that at some point a criminal may be regarded as having paid his debt to society. In contrast, the interdict provision becomes effective on a first offense misdemeanor and operates for the remainder of a defendant's life. Although it does not involve imprisonment, the interdict compares unfavorably to the sentence for murder in one sense: there is no hope of its sanctions ending.

Obviously it cannot be said that the prison term imposed upon a person convicted of homicide is less severe than the interdict penalty. The theoretical distinction must be recognized however and taken into consideration in determining the proportionality of the interdict penalty to the underlying offense.

The third factor to be considered under *Solem* is a comparison of penalties imposed by other jurisdictions for similar crimes. The federal antitrust statute contains no provision similar to the interdict. One state antitrust statute has been located which contains such a sanction, and the Supreme Court of that state held in 1904 that the provision contemplated

"prohibiting only the continuing of business or the engaging in business in the state, in violation of the act. It was not intended thereby to prohibit persons continuing or engaging in any lawful business in the state, not conducted or carried on in violation of the act. Viewed in the light of the interpretation thus given it, the provision is a valid exercise of legislative power, and is not open to the charge made against it by appellant that it constitutes in effect banishment from the state."

*State v. Jack,* 69 *Kan.* 387, 76 *P.* 911, 915, aff'd, 199 *U.S.* 372, 26 *S.Ct.* 73, 50 *L.Ed.* 234 (1905).

There is nothing in the Kansas statute which would indicate that the intention of the legislature was what the court found it to have been, nor is there anything in the New Jersey statute which would warrant this conclusion. The Kansas court imposed a limiting construction, apparently in order to render the statute constitutional. The better course is to declare the provision unconstitutional and therefore null and void.

It is the conclusion of this court that under the three guidelines set down by the United States Supreme Court in the *Solem* case, the interdict provision of the New Jersey Antitrust Act constitutes one of those rare penalties which violates the cruel and unusual punishment clauses of the federal constitution and the New Jersey Constitution.

The disproportionality of this penalty to the underlying crime is emphasized by the circumstances of the two individual defendants soon to be before the court for sentencing under the Antitrust Act. Louis William Spiegel is 61 years old and the present offense represents his first arrest and conviction of any kind. He is a high school graduate and served for three years in the military during World War II. He received a Good Conduct Medal, among other decorations, and was honorably discharged in 1946. His family background was poor but stable. He is the owner and president of a trash hauling company, having been in business for himself since leaving the military. He is in relatively good health and enjoys a happy marriage.

Anthony Scioscia is 53 years old and this offense is his first arrest and conviction. He left high school after the ninth grade in order to go to work. His father had died two years earlier. He comes from a stable family environment and enjoys good relations with his siblings as well as a happy marriage. He has lived in Westfield, New Jersey all of his life, and served in the military from 1954 to 1956. He was honorably discharged. He founded a disposal business in 1949. In 1957 his brother joined the firm and the two now own and operate the business as a partnership.

Both defendants have led exemplary lives with the exception of the instant offense. Despite their limited formal education they have developed their abilities and maximized their opportunities in the business world. To deprive them now of their property and the use of their hard-won skills in the future would work a manifest injustice. They and others similarly situated must be given the opportunity to function within the lawful limits of the business community, despite their previous lapses into illegality.

Because the court has determined that the interdict provision is violative of the cruel and unusual punishment prohibitions of the United States and New Jersey constitutions, it is unnecessary to reach the questions raised by defendants regarding other constitutional issues.

It is clear that the interdict provision is severable from the remainder of the Antitrust Act. *N.J.S.A.* 1:1–10. Its absence will not affect the definition of the substantive offense and the remaining portions of the statute constitute a complete act in themselves. In addition, substantial penalties, both civil and criminal, will still be available after the interdict is severed. *N.J.S.A.* 56:9–7, 9–8, 9–10, 9–11 a. Future violations of the Act will be deterred by these provisions. Therefore, no substantial impairment of the principal object of the statute will result from the excision of the interdict. *See Inganamort v. Borough of Fort Lee,* 72 *N.J.* 412, 422–23 (1977).

The motion is granted.