STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. NEW JERSEY TRADE WASTE ASSOCIATION, DEFENDANT, AND COUNTY OF SOMERSET, INTERVENOR-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 2, 1984—Decided May 22, 1984.

Before Judges MATTHEWS, J.H. COLEMAN and GAUL-KIN.

*Gerard C. Sims, Jr.,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General, attorney).

*Michael V. Camerino,* Deputy County Counsel, argued the cause for respondent (*Ozzard, Rizzolo, Klein, Mauro & Savo,* attorneys; *Michael V. Camerino* and *Arthur D. Fialk,* on the brief).

PER CURIAM.

The State appeals from a September 13, 1983 order directing payment to the Treasurer of Somerset County a total of $130,-000 in fines collected from Carmine Franco, Anthony Scaffidi and Anthony Rizzo upon their pleas of guilty to violations of the Solid Waste Utility Control Act of 1970, *N.J.S.A.* 48:13A–1

*et seq.* The State urges that the fines should be paid over to the State "revolving fund" established by *N.J.S.A.* 56:9–19.

On October 7, 1980 a State Grand Jury handed down an indictment charging a number of persons and firms with engaging in "a combination and conspiracy in unreasonable restraint of the business of providing garbage collection services" in violation of the New Jersey Antitrust Act, *N.J.S.A.* 56:9–3. Following plea negotiations, Franco, Scaffidi and Rizzo each pleaded guilty to a violation of the Solid Waste Utility Control Act, *N.J.S.A.* 48:13A–10(a), which provides:

> No person shall monopolize, or attempt to monopolize, or combine or conspire with any other person to monopolize, trade or commerce in any relevant market, located in whole or in part in this State, for the solid waste collection business or the solid waste disposal business.

The plea was entered under this statute rather than under the Antitrust Act[1] to avoid burdening the defendants with the "interdict" sanctions of *N.J.S.A.* 56:9–11(b).[2]

Each defendant was sentenced to three years probation on condition that he serve 180 days at the Somerset County Jail. Franco was fined $50,000; Scaffidi and Rizzo were fined $40,-000 each. The judgments directed that the fines be paid to the

---

[1]The penalties provided by the Solid Waste Utility Control Act, *N.J.S.A.* 48:13A–12(a), and the Antitrust Act, *N.J.S.A.* 56:9–11(a), are comparable.

[2]*N.J.S.A.* 56:9–11(b) provides in relevant part:

> b. Any person convicted pursuant to the provisions of subsection a of this section is hereby denied the right and is hereby prohibited from managing or owning any business organization within this State, and from serving as an officer, director, trustee, member of any executive board or similar governing body, principal, manager, stockholder owning 10% or more of the aggregate outstanding capital stock of all classes of any corporation doing business in this State, and all persons within this State, are hereby denied the right to handle the goods of or in any manner deal with, directly or indirectly, those persons, companies or corporations under the interdict specified herein.

The interdict provision was later held unconstitutional on motion brought by other defendants to this suit. *State v. New Jersey Trade Waste Ass'n,* 191 *N.J.Super.* 144 (Law Div.1983). We express no opinion on this issue.

Chief Probation Officer of Somerset County "and distributed by him in accordance with the provisions of *N.J.S.A.* 56:9–19."

Thereafter the County of Somerset was permitted to intervene "regarding the issue of the proper disposition of fines," and the court amended the judgments to delete the reference to the distribution of fines under *N.J.S.A.* 56:9–19. Following a hearing to reconsider the "decision to modify the sentences," the court ordered that the fines "be distributed by the Chief Probation Officer of the County of Somerset in accordance with *N.J.S.A.* 2C:46–4(b)(1) to the Treasurer of the County of Somerset." This appeal followed.

The State contends that the Antitrust Act, *N.J.S.A.* 56:9–19, allocates the fines to the State:

There is hereby appropriated out of the General State Fund to the Department of Law and Public Safety for the purpose of this act the sum of $100,000.00 for the period ending June 30, 1971, which sum shall be returned to the General State Fund from the sums derived from litigation instituted by the Attorney General under this act or the antitrust laws of the United States, as determined by the Director of the Division of Budget and Accounting. In addition to the sum hereinabove appropriated, there are hereby appropriated as a revolving fund the sums derived as aforesaid for the purpose of paying any additional expenses incurred by the Attorney General in the administration of this act or litigation instituted under the antitrust laws of the United States, provided, however, that the expenditure of such additional sums shall first be approved by the Director of the Division of Budget and Accounting and the Legislative Budget and Finance Director in the same manner as transfers of appropriations are approved.

The County, on the other hand, claims entitlement to the fines by reason of *N.J.S.A.* 2C:46–4(b)(1):

(b) Except as provided in subsection c. with respect to fines imposed on appeals following convictions in municipal courts, all fines imposed by the Superior Court, county district court, or otherwise imposed at the county level, shall be paid over by the officer entitled to collect same to:

(1) The county treasurer with respect to fines imposed on defendants who are sentenced to and serve a custodial term, including a term as a condition of probation, in the county jail, workhouse or penitentiary except where such county sentence is served concurrently with a sentence to a State institution.

In his oral opinion below, the judge found no conflict between *N.J.S.A.* 2C:46–4 and *N.J.S.A.* 56:9–19. He concluded that *N.J.S.A.* 2C:46–4(b)(1) fixes "the appropriate allocation of funds

collected" while *N.J.S.A.* 56:9–19 "deals with the appropriation of State funds." The judge sought to "giv[e] effect to both provisions in question" by construing *N.J.S.A.* 56:9–19 to permit the "revolving fund" therein established to receive "only those funds which result from antitrust litigation and which are turned over to the State under the criteria of *N.J.S.A.* 2C:46–4." We find this reading of the statutory sections unpersuasive.[3]

The Antitrust Act, enacted in 1970 as part of an anti-organized crime package (*L.*1970, *c.* 73, § 3), declares "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, in this State" to be unlawful. *N.J.S.A.* 56:9–3. Enforcement of the act is entrusted to the Attorney General, who is directed to "investigate suspected violations of, and institute such proceedings as are hereinafter provided for violation" of the Act. *N.J.S.A.* 56:9–6. Broad authority is granted to the Attorney General for those purposes. See *N.J.S.A.* 56:9–7; *N.J.S.A.* 56:9–8; *N.J.S.A.* 56:9–9; *N.J.S.A.* 56:9–10. Violations of the Act are sanctioned both by substantial criminal fines and sentences and treble damage civil liability. *N.J.S.A.* 56:9–11; *N.J.S.A.* 56:9–12. The Legislature clearly contemplated that the expense to the State of enforcing the Act would be substantial and, in *N.J.S.A.* 56:9–19, structured a means to pay the cost of enforcement by using the proceeds of enforcement. "[T]he sums derived from litigation instituted by the Attorney General under [the Antitrust Act] or the antitrust laws of the United States" were to be used to repay the initial $100,000 appropriation and thereafter "the sums derived as aforesaid" were to comprise the "revolving fund" for the purpose of paying expenses incurred by the Attorney General in the administration of the Act. *Ibid.*

■ We discern from these provisions of the Act a legislative mandate that all "sums derived" from antitrust litigation, civil

---

[3] A recent amendment to *N.J.S.A.* 2C:46–4 is not relevant to our discussion. *L.*1983, *c.* 73, § 1.

and criminal, instituted by the Attorney General are to be appropriated to the "revolving fund." The contention that *N.J.S.A.* 56:9–19 merely allocates monies among various State accounts fails, in our view, to give proper and sympathetic recognition to the legislative directive that antitrust recoveries shall fund future antitrust investigation and litigation. The subsequent enactment of *N.J.S.A.* 2C:46–4 cannot fairly be regarded as evidencing a new and different legislative intent concerning antitrust enforcement. *N.J.S.A.* 2C:46–4 is part of the Criminal Code; the generality of its purpose and language should not prevail over the particularized mandate of the Antitrust Act. *Cf. In re Salaries Probation Officers Hudson Cty.*, 158 *N.J.Super.* 363 (App.Div.), certif. den. 78 *N.J.* 339 (1978).

 Since the fines levied here were "derived from litigation instituted by the Attorney General under [the Antitrust Act]," they are to be transferred to the State for the "revolving fund." The fact that defendants pleaded guilty to an offense under the Solid Waste Utility Control Act is of no significance. The litigation was not only instituted under the Antitrust Act, but was litigated as such up to the entry of the pleas; the defendants pleaded under the Solid Waste Utility Control Act to offenses of the same nature as those charged under the Antitrust Act; it was only the presence of the "interdict" provision of the Antitrust Act that caused the parties to avail themselves of the parallel provisions of the Solid Waste Utility Control Act. We see no reason to elevate form over substance. The reality is that the fines were derived from a litigation instituted and conducted by the Attorney General under the Antitrust Act. For the reasons set forth, those fines should be turned over to the State for the "revolving fund" established under *N.J.S.A.* 56:9–19.

The order of September 13, 1983 is reversed. The matter is remanded to the Law Division for entry of an appropriate order in conformity with this opinion.