JOHN J. KNOBLE AND SERGIO INTRONA, RESPONDENTS, v. WATERFRONT COMMISSION OF NEW YORK HARBOR, APPELLANT.

Argued April 28, 1975—Decided June 10, 1975.

*Mr. Gerald P. Lally* argued the cause for appellant (*Mr. Irving Malchman,* of the New York Bar, and *Mr. Robert A. Pin,* on the brief; *Mr. Charles J. Harrington, Jr.,* General Counsel and Attorney for the Waterfront Commission of New York Harbor, attorney).

*Mr. John P. Croake* argued the cause for respondents (*Mr. Joseph R. McMahon and Mr. Croake,* of counsel; *Mr. Wayne J. Positan,* on the brief; *Messrs. Lum, Biunno & Tompkins,* attorneys).

The opinion of the Court was delivered by

SULLIVAN, J. This appeal involves the issue whether the action taken by the Waterfront Commission of New York Harbor in revoking the licenses previously issued to John J. Knoble and Sergio Introna as port watchmen (security guards) and port watchmen (pier guards)[1] because of their involvement in a payroll padding scheme was unduly severe and therefore arbitrary and unreasonable. The Appellate Division so found and modified the penalties imposed by vacating the revocations and denial of license and ordering

---

[1] Knoble held only a temporary permit as a port watchman (pier guard) while his application for a license therefor was pending. The Waterfront Commission revoked Knoble's temporary permit and also denied his application for a license.

that Knoble's and Introna's licenses be suspended for a period of one year.

We granted certification, 67 *N. J.* 98 (1975), on the cross-petition of the Waterfront Commission to consider only the question whether the Appellate Division exceeded the proper scope of appellate review in modifying the original penalties.

The essential facts are not in dispute and are summarized by the Appellate Division as follows:

John J. Knoble was a day supervisor, Sergio Introna a night supervisor and Richard H. Roed (not involved in these appeals) a pier guard for McRoberts Protective Agency, Inc., at piers A, B and C in Hoboken, New Jersey. Roed, who was Knoble's son-in-law and had a full-time day job at Electric Service Repair Center in Hawthorne (40 minutes by car from the piers) worked the 4 p.m. to midnight shift at piers A, B and C as a pier guard. Knoble made up the payroll time sheets for McRoberts in draft form and gave them to Introna who prepared the time sheets in final form.

A Commission investigation disclosed that between June 28, 1971 and October 16, 1971, Roed was absent from his duties on the piers for a total of 136 hours but was paid $444.50 for this work he did not actually perform. The schedule prepared to show this discrepancy was based upon Roed's time cards at Electric Service Repair, the logbook of the Commission in which each port watchman is required to sign his times in and out, and the payroll time sheets of McRoberts that were prepared by Knoble and Introna.

Knoble and Introna were charged with falsely recording Roed's working at times when he was not physically present. * * * Based upon these facts, the Commission concluded Knoble and Introna had misappropriated property by means of false and fraudulent misrepresentations and pretenses to their employer, an offense under *N. J. S. A.* 32:23-93, and had demonstrated a lack of good character and integrity which was cause to revoke or suspend their licenses under *N. J. S. A.* 32:23-41.

The Appellate Division agreed with the Waterfront Commission that Knoble and Introna by their conduct had demonstrated a lack of good character and integrity within the comprehension of the Waterfront Commision Act, *N. J. S. A.* 32:23-41(a), and thereby subjected themselves to the discipline set forth in *N. J. S. A.* 32:23-44(a). In view of the foregoing conclusion the Appellate Division deemed it

unnecessary to determine whether, as found by the Waterfront Commission, the same conduct also constituted a misappropriation of property in contravention of *N. J. S. A.* 32: 23–93(2).

■ However, while the Appellate Division agreed that Knoble's and Introna's conduct was such as to call for the imposition of some penalty or discipline, it concluded that in view of the fact that these men had not benefitted financially from their actions and were only helping Knoble's young son-in-law "make some extra money," and considering their 16 years of previous satisfactory service on the waterfront, revocation and denial of their licenses was unduly severe and therefore arbitrary and unreasonable. We reverse and reinstate the original penalties imposed by the Waterfront Commission for the following reasons.

The Waterfront Commission was created by the States of New York and New Jersey "to deal with sundry evils of the waterfront of the New York Harbor." *State v. Murphy,* 36 *N. J.* 172, 185 (1961). A discussion of the conditions on the waterfront which led to the compact between the two states is set forth in *Hazelton v. Murray,* 21 *N. J.* 115, 120–122 (1956). Our Waterfront Commission Act, *N. J. S. A.* 32:23–1 *et seq.,* is the counterpart of the statute of the same name contemporaneously adopted by the State of New York, *New York Laws* 1953, *c.* 882, *c.* 883, *McKinney's Unconsolidated Laws,* §§ 6700aa–6700zz.

The Waterfront Commission is given broad powers of licensing and regulation to carry out the purposes of the Act. Under *N. J. S. A.* 32:23–39 no person may act as or be employed as a port watchman unless licensed as such by the Commission. One of the statutory qualifications for a port watchman license is that the person "possesses good character and integrity." *N. J. S. A.* 32:23–41(a). A port watchman license issued by the Commission may be revoked or suspended for such period as the Commission deems in the public interest or the licensee may be reprimanded for

"[c]onviction of a crime or other cause which would permit or require his disqualification from receiving a license upon original application." *N. J. S. A.* 32 :23–44 (a).

In the instant case the uncontradicted proofs show that Knoble and Introna, acting in concert with Richard H. Roed (Knoble's son-in-law), falsified Roed's payroll time work records to show Roed was working as a pier guard at times when he was not even present and was actually shown to be working at other employment. Based on these records Roed was paid some $444.50 for work he did not perform.

Both the Commission and the Appellate Division found that the foregoing demonstrated that Knoble and Introna were lacking in good character and integrity. This finding is manifestly correct. *C. C. Lumber Co., Inc. v. Waterfront Commission of New York Harbor,* 31 *N. Y.* 2d 350, 339 *N. Y. S.* 2d 937, 292 N. E. 2d 1 (1972) ; *DiBella v. Waterfront Commission of New York Harbor,* 39 *A. D.* 2d 653, 331 *N. Y. S.* 2d 726 (1973). Basic honesty was an essential requirement of Knoble's and Introna's employment, for not only did their duties include protection of property on the piers, but they also held licenses as security officers and thus supervised other pier guards in the performance of their duties.

Even aside from the statutory requirement of good character and integrity (*supra*), inherent in the employment relationship would be the duty of fidelity and loyalty which every employee owes to his employer.

We cannot agree with the Appellate Division that the penalty imposed by the Waterfront Commission was unduly severe. The Commission was created to purge the waterfront of the evils that were plaguing legitimate port operations. To require honesty as a condition of employment from those engaged in the sensitive work of safeguarding property on the piers is essential if the Commission is to carry out its purposes. We must recognize the Commis-

432

sion's long standing experience with waterfront problems and ordinarily defer to its judgment as to the appropriate penalty or discipline to be imposed in a given situation. *C. C. Lumber Co., Inc. v. Waterfront Commission, supra,* 339 *N. Y. S.* 2d at 944; *Schultz v. Waterfront Commission of New York Harbor,* 35 *A. D.* 2d 373, 316 *N. Y. S.* 2d 545, 547 (1970). Its action in the matter before us has not been shown to be arbitrary or unreasonable. *In re Kaiser,* 94 *N. J. Super.* 95 (App. Div. 1967).

The judgment of the Appellate Division is reversed and the original penalty imposed by the Waterfront Commission is hereby reinstated.

*For reversal*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.