IN THE MATTER OF J.I.S. INDUSTRIAL SERVICE CO. AND DONALD JONES.

Superior Court of New Jersey
Appellate Division

Argued December 3, 1985—Decided December 30, 1985.

Before Judges PRESSLER, DREIER and GRUCCIO.

*Anthony B. Vignuolo* argued the cause for appellant (*Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl,* attorneys; *Mr. Vignuolo* and *Leslie Jeddis Lang,* on the brief).

*John A. Covino,* Deputy Attorney General argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Mr. Covino,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

J.I.S. Industrial Service Co. and its principal, Donald Jones, have appealed from a final order of the Commissioner of the Department of Environmental Protection revoking their licenses and permits for all operations governed by the Solid Waste Management Act, *N.J.S.A.* 13:1E–1 *et seq.* Jones and J.I.S. owned and operated a sanitary landfill and a transfer station, and Jones through J.I.S. Corp., a separate corporation, owned and operated a waste hauling business. The landfill has been operationally closed under prior orders of both D.E.P. and the Chancery Division, although physical closure of the site is still underway and awaits D.E.P. approval of the capping and waste water treatment. The operation of the transfer facility also has been terminated, or at least suspended, by virtue of contamination by leachate from the site. Although no problems have been documented with respect to the collectors/hauler business, the all-encompassing orders of the D.E.P. have effectively debarred Jones from the operation of this business conducted by him for approximately 40 years without complaint from a public authority.

We need not fully recount the charges and countercharges of inefficiency, mismanagement, perfidious agreements and the like that the parties have made against each other. Appellants contend that there have been bona fide attempts at compliance with D.E.P.'s orders for the past 15 years, thwarted by physical conditions at the landfill, changes in consultants, in-

consistent orders by the D.E.P. and personal animosity between the parties. Appellants claim to have been singled out for selective enforcement and debarment. Appellants further assert that they have spent hundreds of thousands of dollars in attempts to comply with D.E.P.'s orders, but D.E.P. has unreasonably rejected their plans and performance. D.E.P. on the other hand portrays appellants as procrastinating polluters who have defied departmental orders, their own settlement agreement in the Chancery action and all reasonable attempts to effect an orderly closure of the landfill. From our review of the record it does not appear that plaintiffs are the arch-villians portrayed by the Department, nor is the D.E.P. a sadistic bureaucracy that has held appellant's feet to the fire for the sheer delight of inflicting the punishment. On review we have seen some apparent errors on the part of the D.E.P. in the decade and a half of attempts to achieve compliance by appellants. Yet our examination of the record has revealed sufficient reasonably documented specific defaults by appellants of orders of the D.E.P. and the Chancery settlement agreement to substantiate the departmental orders closing the landfill and denying the transfer station permit. Such actions are, therefore, affirmed. *Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 483–84 (1974).

The harder question in this case is the effective debarment of Jones, even when acting through J.I.S. Corp. (as opposed to J.I.S. Industrial Service Co.) from holding any license issued by the Department. Although a collector/hauler license was initially granted to J.I.S. Corp. in 1982, it had been in continuous operation in the waste collection business for approximately 40 years without violation. The administrative law judge noted that in appropriate cases the corporate veil may be pierced: "[O]ur courts have looked through corporate status where the public interest has so required. *Metropolitan Motors v. State*, 39 *N.J.Super.* 208 (App.Div.1956)". We agree that in the appropriate case the revocation of a license for the moral deficiencies noted in *N.J.S.A.* 13:1E–133 would justify a

revocation of all licenses under *N.J.S.A.* 13:1E–134a. Here, however, the adjudication by the Commissioner that "Donald Jones is unfit for the businesses regulated by Solid Waste Management Act" is based upon Jones' ongoing disputes with the Department over specific separately regulated and licensed businesses unrelated to the collector/hauler operation.

If this plenary debarment is to have effect, there should be some rational connection between the findings and the punishment meted out. We note the difference between the thrust of *N.J.S.A.* 13:1E–134 permitting the revocation of licenses upon moral turpitude grounds and *N.J.S.A.* 13:1E–12. We put to one side the issue of whether this Act, effective June 11, 1984, would have applied to the events predating its enactment. Although the final debarment by the Commissioner was dated June 22, 1984, his action was based upon a trial and recommended decision which predated the effective date of the Act. We merely note that the moral character and background of the applicants have only been injected within the licensing and revocation procedure since the events here complained of, notwithstanding the Commissioner's findings of moral unfitness under the pre-amendment Act.

At the time proceedings were instituted against petitioner the revocation or suspension of a registration was governed solely by *N.J.S.A.* 13:1E–12:

> The department, after hearing, may revoke or suspend the registration issued to any person engaged in the solid waste collection or solid waste disposal upon a finding that such person:
>
> a. Has violated any provision of this act or any rule, regulation, or administrative order promulgated hereunder; or
>
> b. Has violated any provision of any laws related to pollution of the waters, air or land surfaces of the State; or
>
> c. Has refused or failed to comply with any lawful order of the department.

*N.J.S.A.* 13:1E–5 provides that separate registrations are required for each activity carried on by a registrant, and *N.J.S.A.* 13:1E–12 governs the revocation or suspension of a "registration issued to any person engaged in the solid waste collection or solid waste disposal" business. The registrations had been

issued to the various corporate entities. Although the administrative law judge found that there was no basis for holding that Donald Jones could be found unfit to hold a license through another entity under this section, the Commissioner disagreed and determined that debarment was proper.

We agree with the Commissioner's determination that the corporate veils could be pierced to fix responsibility upon the owners or key employees who gave grounds for the revocation or suspension under *N.J.S.A.* 13:1E–12. Therefore if Donald Jones were to form a new corporation to own or manage a sanitary landfill or a transfer station, the registration revocation might well be invoked to prevent such relicensure. We diverge with the Commissioner, however, in his application of the bar to Jones' ownership or operation of a different business, free from the engineering problems and general environmental impact that caused the ongoing disputes between the Department and appellants. It makes no sense to us to acknowledge on one hand that Jones' collector/hauler business has an unblemished record and then to revoke his registration for this business because of his ongoing dispute with the Department as to his separate business. This is especially true where the disputes are technically concerning engineering matters and alleged ground water contamination in situations where there was at least a bona fide dispute as to appellant's responsibility for the pollution.

The revocation envisioned by *N.J.S.A.* 13:1E–12 is not punitive but protective. The very title of the Department of Environmental Protection exemplifies the aim of the Act. The environment will not be any less protected if Donald Jones continues to conduct his collector/hauler business. A penalty imposed by an administrative agency must be neither arbitrary nor unreasonable. *Cf. Knoble v. Waterfront Comm. of N.Y. Harbor,* 67 *N.J.* 427, 432 (1975). The Department will have accomplished its purpose if Donald Jones is foreclosed from operating a landfill or transfer station. If the fitness of Donald Jones to hold any license is to be examined, the appropriate

proceedings should be under *N.J.S.A.* 13:1E–126 *et seq.* and there the focus under *N.J.S.A.* 13:1E–134b would be upon "fraud, deceit or misrepresentation in securing the license, or in the conduct of *the licensed activity."* (Emphasis added). If, however, a charge is to be brought under *N.J.S.A.* 13:1E–133b(22), a prior *criminal* violation of the Solid Waste Utility Control Act, or under *N.J.S.A.* 13:1E–133b(19), a "purposeful or reckless violation of the criminal provisions of any federal or state environmental protection laws, rules or regulations," (both incorporated as grounds for revocation in *N.J.S.A.* 13:1E–134a), the Department would be required to demonstrate more than that which has been shown in the dispute-ridden record before us.

The order appealed from is modified so as to remove the general debarment of appellants from conducting other than the licensed activities for which their licenses properly were revoked. Donald Jones should be specifically permitted to continue his collector/hauler business under the J.I.S. Corp. registration. Except as so modified, the decision of the Commissioner of Environmental Protection is affirmed.