216 N.J. Super. 644 (1987)
524 A.2d 855
IN THE MATTER OF ANTHONY & KEARNEY SCIOSCIA, T/A HOME & INDUSTRIAL DISPOSAL SERVICE, INC., AND ANTHONY SCIOSCIA, INDIVIDUALLY.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1986.
Decided March 23, 1987.
*648 Before Judges MICHELS, O'BRIEN and SKILLMAN.
Joseph Rosa, Jr., argued the cause for appellant (Riccardelli, Gasiorowski & DeMassi, attorneys; Joseph Rosa, Jr., on the brief).
George W. Fisher, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney; Andrea M. Silkowitz, Deputy Attorney General, of counsel; Katherine L. Suga, Deputy Attorney General, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This is an appeal from an order of the Board of Public Utilities (BPU) revoking the certificate of public convenience and necessity of appellant Home and Industrial Disposal Service (Home), prohibiting appellant Anthony Scioscia, who was the manager and half owner of Home, from participating in the solid waste business and imposing $500 penalties upon both appellants. We affirm.
The BPU's order was based upon appellants' participation in a complex conspiracy to rig bids on garbage collection contracts in northern New Jersey. The criminal charges arising out of this conspiracy have been the subject of three reported opinions. *649 State v. New Jersey Trade Ass'n, 96 N.J. 8 (1984); State v. Scioscia, 200 N.J. Super. 28 (App.Div. 1985), certif. den. 101 N.J. 277 (1985); State v. N.J. Trade Waste Ass'n, 191 N.J. Super. 144 (Law Div. 1983).
In State v. Scioscia, we affirmed appellants' criminal convictions for knowingly engaging in a combination and conspiracy in restraint of trade, in violation of N.J.S.A. 56:9-3.[1] Appellants' illegal activities which resulted in their criminal convictions and in the BPU order from which this appeal is taken are described as follows in Scioscia:
The charges and resulting convictions emanated out of defendants' participation in an unlawful customer allocation agreement. As part of the alleged conspiracy, members acquired exclusive "property rights" which permitted them to provide garbage collection service to different locations without competition. The agreement was designed to stifle "predatory" bidding practices which had been long dominant in the industry. The conspiracy was implemented through the formation of the New Jersey Trade Waste Association (TWA). In order to prevent competition between collectors, the TWA provided an "amnesty period" after which the "property rights" to service specific areas were assigned. Such rights were conferred upon the first Association member to serve a given location. Although competition in the industry was largely illusory, the appearance of legality was maintained through the utilization of collusive and complementary bids. Stated somewhat differently, the collectors and haulers would submit bids in accordance with a prearranged plan to insure that the Association member having the property rights to a particular area would ultimately be awarded the contract. [200 N.J. Super. at 32-33].
The evidence presented to the Administrative Law Judge (ALJ) assigned to hear the matter for the BPU was essentially limited to the judgments of conviction. Appellants chose to present no evidence. Our opinion affirming appellants' criminal convictions also was made part of the administrative record.
The ALJ concluded that appellants had violated both the Solid Waste Utility Control Act, N.J.S.A. 48:13A-1 et seq. (the Act) and an implementing regulation adopted by the BPU, N.J.A.C. 14:3-10.12. He recommended that Home's certificate of public *650 convenience and necessity be revoked. However, he concluded that only monetary penalties should be imposed against Scioscia.
The BPU agreed with the ALJ's conclusions that appellants had violated the Act and its implementing regulation and that Home's certificate of public convenience and necessity should be revoked. However, the BPU concluded that the public interest required that Scioscia also should be prohibited from participating in the solid waste business. It stated that "[t]his prohibition against the individual flows from our conclusion that he personally conspired to eliminate competition in violation of the Solid Waste Utility Control Act and the corresponding regulation and that these acts strike at the core of the legislation regulating this industry."
Following the filing of a notice of appeal, we granted a stay pending appeal of the part of the BPU's order which prohibits Scioscia from engaging in the solid waste business. Appellants' brief raises nine points, many of which are clearly lacking in merit or overlap with other points. There are four contentions which require discussion: (1) the judgments of conviction provided an insufficient basis upon which to conclude that appellants violated the Act; (2) the BPU lacked statutory authority to prohibit Scioscia from engaging in the solid waste business; (3) the part of the BPU's order prohibiting Scioscia from engaging in the solid waste business constituted improper de facto rulemaking; and (4) the BPU abused its discretion in prohibiting Scioscia from engaging in the solid waste business.

I.
Appellants were convicted of a conspiracy to restrain trade, in violation of N.J.S.A. 56:9-3, a section of the New Jersey Antitrust Act. The BPU relied upon the judgments of conviction of this crime to establish that appellants violated N.J.S.A. 48:13A-10a, which provides:

*651 No person shall monopolize, or attempt to monopolize, or combine or conspire with any other person to monopolize, trade or commerce in any relevant market, located in whole or in part in this State, for the solid waste collection business or the solid waste disposal business.
Appellants argue that a conspiracy to restrain trade and an attempt or conspiracy to monopolize trade are fundamentally different offenses, constituting violations of different sections of the New Jersey Antitrust Act (compare N.J.S.A. 56:9-3 with N.J.S.A. 56:9-4), and that a conviction under N.J.S.A. 56:9-3 is therefore insufficient to prove a violation of N.J.S.A. 48:13A-10a.
To evaluate this argument, it is appropriate to review the legislative history of the Act. This legislation resulted from a report prepared by the State Commission of Investigation (SCI) which contained the following summary of problems in the solid waste industry:
... [I]n this industry there are number of trade associations which have constitutions or by-laws that seek to preserve the status quo. If one member takes a customer from another member, he is required to pay an indemnity or penalty to that other member based on a multiple of the monthly collection charge paid by the customer. For failure to do so, he may be fined by the trade association.... The effect of these provisions and practices, of course, is to greatly discourage competition in the industry. By-law provisions encourage collusive bidding and preserve allocations of customers either by territories or on some other basis. The allocation of customers is perhaps the greatest vice in the industry. At present, there is no legislation in the State of New Jersey which prohibits garbage collectors from parceling out towns, areas or customers to one another. Unless this vice is checked, more and more municipalities will be faced with the situation where they receive only one bid for their waste collection contracts. It is a take-it-or-leave-it proposition in a situation where you can't leave it. A Report Relating to the Garbage Industry of New Jersey, N.J. State Commission of Investigation (Oct. 7, 1969) at 4-5.
To address these problems the SCI made the following recommendations:
(1) Enact legislation which will prohibit customer and territorial allocations in the garbage industry. This legislation should also prohibit price fixing arrangements and collusive bidding among waste collection contractors and make unlawful present trade association constitutions, by-laws and resolutions which prohibit or discourage one waste collector from taking a customer from another.
(2) Enact legislation providing for the licensing by the State (to the exclusion of municipal licensing) of all waste collectors throughout the State. This licensing *652 law should provide for the availability to the public of the names of the real persons in interest of each waste collection and waste disposal company.
(3) Enact legislation prohibiting the discrimination either as to availability or as to price in the use of privately owned waste disposal areas. Id. at 6-7.
Shortly after receipt of this report  and clearly in response to its recommendations  the Legislature enacted the Solid Waste Utility Control Act of 1970.
It is fundamental that where legislation is susceptible to different interpretations it should be interpreted in accordance with its underlying objectives. New Jersey Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338-340 (1972); State v. Gill, 47 N.J. 441, 444 (1966). Here, a primary objective of the Act was to address the evils identified by the SCI  allocation of customers among members of trade associations, collusive bidding and price fixing. See In re Application of Saddle River, 71 N.J. 14, 21-26 (1976). However, the Act does not expressly mention these practices nor does it contain the term "restraint of trade." Rather, N.J.S.A. 48:13A-10a is the only section which prohibits anticompetitive conduct. Therefore, unless the antimonopoly provisions of N.J.S.A. 48:13A-10a are interpreted to prohibit collusive bidding, price fixing and other related practices in restraint of trade, such practices would not be covered by the Act.
The meaning of the terms "monopoly" and "restraint of trade" are closely related. Standard Oil Co. v. U.S., 221 U.S. 1, 48-62, 31 S.Ct. 502, 511-516, 55 L.Ed. 619 (1911). Indeed, the Supreme Court has noted that "... monopoly and the acts which produce the same result as monopoly, that is, an undue restraint of the course of trade, all came to be spoken of as, and to be indeed synonymous with, `restraint of trade.'" Id. at 61, 31 S.Ct. at 516. Furthermore, the meaning of both terms may vary depending upon the context in which they are used. Id. at 63-69, 31 S.Ct. at 517-519. In view of the underlying purposes of the Act and the closely related meanings of the terms "monopoly" and "restraint of trade," we conclude that the prohibitions of N.J.S.A. 48:13A-10a should be interpreted to *653 extend to allocations of customers, price fixing, collusive bidding and related practices in restraint of trade.
Any possible doubt concerning the appropriateness of this interpretation of N.J.S.A. 48:13A-10a is eliminated by the rules and regulations adopted by the BPU. The Act extended the general regulatory authority of the BPU over public utilities to solid waste collectors, L. 1970, c. 40, § 4, N.J.S.A. 48:2-13, and specifically conferred rulemaking authority upon the BPU with respect to the "public utility aspects of the solid waste collection industry," L. 1970, c. 40, § 5, N.J.S.A. 48:13A-4. The rules and regulations adopted by the BPU to govern solid collection and disposal include N.J.A.C. 14:3-10.12, which provides:
No solid waste collection or solid waste disposal utility shall agree with any other utility or person to limit bidding or withdraw from the specific territory or endeavor to eliminate competition.
N.J.S.A. 48:13A-10a is cited as the specific authority for this regulation. Such a regulation has a strong presumption of validity. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N J. 544, 560-563 (1978); Motyka v. McCorkle, 58 N.J. 165, 181 (1971). Indeed, even if not embodied in a regulation, "[a]n administrative agency's interpretation of a statute it is charged with enforcing is entitled to great weight." In re Application of Saddle River, supra, 71 N.J. at 24. These principles apply with particular force to the BPU, which has been delegated "... the widest range of regulatory power over public utilities." Deptford Tp. v. Woodbury Terrace Sewerage Corp., 54 N.J. 418, 424 (1969); see also A.A. Mastrangelo, Inc. v. Dep't of Environmental Protection, 90 N.J. 666, 685 (1982); In re Application of Saddle River, supra. Consequently, even if there were some ambiguity in the meaning of the antimonopoly provisions of N.J.S.A. 48:13A-10a, N.J.A.C. 14:3-10.12 reasonably interprets these provisions to prohibit collusive bidding, allocation of customers and related anticompetitive conduct by solid waste collectors.
We are also satisfied that there was more than sufficient evidence before the BPU to support its conclusion that *654 appellants violated N.J.S.A. 48:13A-10a and N.J.A.C. 14:3-10.12. This evidence consisted not only of the indictment and judgments of conviction but also our prior opinion, of which the ALJ and BPU properly took judicial notice, which provided persuasive proof that "... through the assignment of exclusive rights to service particular areas and the utilization of prearranged bids ...," appellants were participants in a "... conspiracy to eradicate competition in the garbage collection industry." 200 N.J. Super. at 44.[2] Indeed, there are striking parallels between the practices in the solid waste business identified by SCI in its report leading to the adoption of the Act and appellants' activities which resulted in their criminal convictions.
Moreover, we reject appellants' argument that the judgments of conviction were hearsay and therefore "a residuum" of other evidence was required to support the BPU's action. See Weston v. State, 60 N.J. 36, 51-52 (1972); N.J.A.C. 1:1-15.8(b). The so-called "residuum rule" only applies to evidence which is inadmissible under the rules of evidence but is allowed into evidence in an administrative proceeding in which the strict rules of evidence do not apply. 3 Davis, Administrative Law Treatise (2nd ed. 1980) § 16.6 at 239-240. Here, the BPU's action was based upon judgments of conviction for an indictable offense, which are admissible under Evid.R. 63(20). Therefore, the judgments were "legally competent evidence" and there was no requirement that the BPU present a residuum of other evidence to support its decision. Cf. Matter of Tanelli, 194 N.J. Super. 492, 497-498 (App.Div. 1984), certif. den. 99 N.J. 181 (1984) (involving a judgment of conviction for a disorderly persons offense, which is not admissible under Evid.R. 63(20) *655 and hence is not "legally competent evidence"). Furthermore, the BPU's decision was based in part on our opinion in State v. Scioscia, supra.

II
Appellants next argue that the Act does not expressly authorize the BPU to prohibit an individual from participating in the solid waste business and hence that the agency exceeded its authority in imposing such a prohibition upon Scioscia. However, the courts in this State have consistently "... held that the grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and that the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." New Jersey Guild of Hearing Aid Dispensers v. Long, supra, 75 N.J. at 562; see also A.A. Mastrangelo, Inc. v. Dep't of Environmental Protection, supra, 90 N.J. at 683-684; New Jersey Ass'n of Health Care Facilities v. Finley, 83 N.J. 67, 79 (1980), cert. den. 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980). The Solid Waste Utility Control Act contains numerous sections which confer pervasive power and responsibility upon the BPU to regulate individuals involved in the solid waste business and to determine qualifications for participation in the business. See, e.g., N.J.S.A. 48:13A-6, 9 and 12. Therefore, we conclude that the authority to exclude individuals from the business may be reasonably implied.
N.J.S.A. 48:13A-12a makes it a misdemeanor for any officer, agent, director, principal, manager or employee of a solid waste collector to violate any provision of the Act. N.J.S.A. 48:13A-12b also subjects any person who violates the Act to civil penalties, which may be sought by the BPU in a summary proceeding. Although N.J.S.A. 48:13A-12 does not expressly authorize the BPU to exclude individuals from the solid waste business, it clearly shows that the Legislature intended individuals *656 involved in the business to be subject to the provisions of the Act.
N.J.S.A. 48:13A-6 provides in relevant part:
No person shall engage, or be permitted to engage, in the business of solid waste collection or solid waste disposal until found by the board to be qualified by experience, training or education to engage in such business, is able to furnish proof of financial responsibility, and holds a certificate of public convenience and necessity issued by the Board of Public Utility Commissioners.
We have no doubt that a person who has violated the Act or any regulation adopted thereunder may be found not "qualified by experience" and hence may be denied permission under N.J.S.A. 48:13A-6 to engage in the solid waste business. Moreover, N.J.S.A. 48:13A-9a provides that:
The board ... shall revoke [or] suspend the certificate of public convenience and necessity issued to any person engaged in the solid waste collection business or the solid waste disposal business upon the finding that such person:
a. Has violated any provision of this act or any rule, regulation or administrative order promulgated hereunder ...
Surely any violation which would justify the revocation of an existing certificate of public convenience and necessity under N.J.S.A. 48:13A-9a also would justify denial of an application for a new certificate under N.J.S.A. 48:13A-6. Cf. In re Berardi, 23 N.J. 485, 491 (1957) ("the same standards that control the granting of the application for the license apply with equal force in a proceeding for the revocation of the license `for cause.'") Therefore, a violation of the Act or an implementing regulation would provide sufficient grounds either to deny a certificate of convenience and necessity or to revoke any existing certificate.
We recognize that N.J.S.A. 48:13A-6 and 9a govern the issuance and revocation of certificates of convenience and necessity to engage in the solid waste business, and that the BPU only issues such certificates to "public utilities" which engage in the business and not to individuals who manage or own solid waste businesses. See also N.J.S.A. 48:2-13, 14. However, we have no doubt that the BPU, in determining whether to grant a new certificate of public convenience and necessity or to revoke *657 an existing certificate, is not restricted to determining whether the applicant itself has violated the Act and its implementing regulations but also may consider whether any manager, officer, director or other principal of the applicant has been guilty of such a violation. As the Supreme Court stated in a related context:
A corporation, as such, has no moral character. The moral responsibility of a corporation is one and the same with the moral responsibility of the individuals who give it direction. [Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 482 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972)].
Therefore, the BPU would have the authority to deny an application for a new certificate of public convenience and necessity or to revoke an existing certificate of any solid waste collector with which a person who has been convicted of violating N.J.S.A. 48:13A-10a might become affiliated as a manager, officer, director or owner.
We see no practical difference between the denial of a certificate of convenience and necessity to a solid waste collector based on its affiliation with Scioscia and the exclusion of Scioscia from the business. Indeed, Scioscia's exclusion can be viewed simply as advance notice to existing and prospective holders of certificates of convenience and necessity that they are prohibited from employing, conveying an ownership interest or otherwise affiliating with Scioscia. Therefore, we conclude that the BPU has the implied authority to prohibit an individual from participating in the solid waste business. Cf. Matter of J.I.S. Industrial Service Co., 206 N.J. Super. 234, 237-239 (App.Div. 1985).

III
Appellants further argue that even if the BPU has the implied authority to exclude an individual from participation in the solid waste business, it was required to adopt rules and regulations before exercising that authority. Although there is no specific statute or regulation stating that an individual may be excluded from the solid waste business, the Solid Waste *658 Utility Control Act clearly indicates that the Act applies to individuals who are principals in solid waste utilities. Thus, N.J.S.A. 48:13A-10a, discussed at length in section I of this opinion, provides that "no person" shall engage in monopolistic activities in the solid waste business. There is no dispute that this section applies to an individual such as Scioscia. This intent is clearly spelled out in N.J.S.A. 48:13A-12a, which provides:
Any person or any officer or agent thereof who shall knowingly violate any of the provisions of this act or aid or advise in such violation, or who, as principal, manager, director, agent, servant or employee knowingly does any act comprising a part of such violation, is guilty of a misdemeanor....
N.J.S.A. 48:13A-12b similarly indicates that "any person" who violates the Act or its implementing regulations is subject to statutory penalties. In short, the Act clearly states that an individual such as Scioscia is subject to its provisions and that civil and criminal proceedings may be brought against him for a violation. In our opinion there was no requirement that the BPU adopt a regulation specifically providing that an individual found guilty of violating the Act or its implementing regulations also would be subject to exclusion from the solid waste business.
A regulatory agency has a high degree of discretion in deciding whether to exercise its powers through rulemaking or case by case adjudication. Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 328-337 (1984); Crema v. New Jersey Dep't of Environmental Protection, 94 N.J. 286, 299 (1983); In re Suspension of Heller, 73 N.J. 292, 304-307 (1977). Here, the Act and implementing regulations spelled out the standards of conduct by which Scioscia was governed. The Act also indicated that he was subject to personal liability for any violation. Furthermore, although the Act and implementing regulations do not specifically state that an individual is subject to exclusion from the business for a violation, a person in the position of Scioscia reasonably should have anticipated that he would jeopardize his right to participate in the business by *659 committing a serious violation of the Act or an implementing regulation.
This case is thus different in a number of important respects from Department of Labor v. Titan Const. Co., 102 N.J. 1 (1985), the case primarily relied upon by appellants to support their argument that the BPU was required to adopt regulations providing for exclusion of individuals from the solid waste business. Titan involved the debarment of corporate officers from public contracting work for corporate violations of the New Jersey Prevailing Wage Act. Unlike the Solid Waste Utility Control Act, the Prevailing Wage Act did not specifically indicate that corporate officers were subject to the prohibitions of that legislation and the remedies it provides. Thus, the court noted that "[t]he Act itself provides no standards establishing the grounds for debarring corporate officers." 102 N.J. at 17. In contrast, Scioscia's debarment was based on a statute and implementing regulation which specifically prohibit conduct in which Scioscia personally engaged. The only area of arguable ambiguity in the Solid Waste Utility Control Act is in the scope of remedies which may be imposed for a violation. The Court in Titan also noted that the Department of Labor's regulations did not afford a corporate officer an individual hearing prior to debarment. Id. In contrast, an amended order to show cause in this case specifically notified Scioscia that the BPU was proceeding against him individually and he was thereafter afforded a full opportunity to present a defense to the charges. Moreover, the position of the Department of Labor in Titan was that a corporate officer could be debarred even though he was "entirely without knowledge of or culpability for the corporate violation," 102 N.J. at 17. The Court therefore concluded that any attempt to impose vicarious liability upon a non-culpable person presented substantial legal and policy issues which should be addressed through rulemaking before punitive action was taken. In contrast, the exclusion of Scioscia from the solid waste industry is based on his own conduct which involved a sufficient degree of personal culpability to result in a criminal *660 conviction. This case is thus significantly different from Titan and is more analogous to cases in which expansive interpretations by State agencies of their own remedial powers first announced in adjudicatory proceedings have been upheld without any discussion of the need to adopt administrative regulations. See, e.g., Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., 78 N.J. 1, 8-16 (1978) (authority of Public Employment Relations Commission to award back pay); Jackson v. Concord Co., 54 N.J. 113, 121-128 (1969) (authority of Division on Civil Rights to award compensatory damages for housing discrimination).
Therefore, we conclude that the BPU had the authority to exclude Scioscia from the solid waste business without first adopting a regulation specifically providing this authority.

IV.
Appellants also argue that the imposition of an absolute prohibition against Scioscia's involvement in the solid waste business for an indefinite period was an excessive sanction for his conduct. However, an administrative agency has broad discretion in determining the sanctions to be imposed for a violation of the legislation it is charged with administering. Knoble v. Waterfront Comm. of N.Y. Harbor, 67 N.J. 427 (1975). Consequently, such a sanction will be set aside on appeal only if it is arbitrary, capricious or unreasonable. Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980); Knoble v. Waterfront Comm'n of N.Y. Harbor, supra, 67 N.J. at 432.
In this case Scioscia was convicted of a form of unlawful conduct  price rigging, allocation of customers and collusive bidding  whose prevention was an essential motivating force leading to enactment of the Solid Waste Utility Control Act. Therefore, the BPU concluded that Scioscia's total exclusion from the solid waste business was required in an effort to *661 eliminate such practices. We perceive nothing unreasonable in this judgment.
The various constitutional arguments advanced by appellants to support their attack upon the sanction imposed by the BPU are clearly lacking in merit. Appellants' argument that the remedial order issued by the BPU constituted a bill of attainder, violative of Article I, § 10 of the United States Constitution, is essentially the same argument rejected in DeVeau v. Braisted, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) and In re Disciplinary Proceedings Against Schmidt, 79 N.J. 344, 356-357 (1979). Appellants' argument that Scioscia's exclusion from the solid waste industry is comparable to the "interdict" contained in N.J.S.A. 56:9-11(b), which a trial court held to be unconstitutional in State v. New Jersey Trade Waste Ass'n, 191 N.J. Super. 144 (Law Div. 1983), is also clearly without merit.[3]N.J.S.A. 56:9-11(b) provides that a person found guilty of violating the Antitrust Act is automatically prohibited for life from owning or serving as an officer or director of "any business organization within this State." In holding this statute to be unconstitutional, the court stressed that it does not exclude a person from a particular licensed profession but rather "... extends to prohibiting involvement in any business at a management or ownership level, for the rest of the defendant's life." 191 N.J. Super. at 150. In contrast, the BPU's order only excludes Scioscia from participation in the solid waste business, which the Legislature has determined to be especially vulnerable to the precise unlawful practices Scioscia was found guilty of committing. Therefore, we conclude that the exclusion of Scioscia from the solid waste business is comparable to the revocation of a license to engage in a particular profession or occupation and is not subject to constitutional attack.
Affirmed.
NOTES
[1] Scioscia was sentenced to an 18 month custodial term, which was suspended, and placed on probation for 2 years. Appellants also were fined $5,000 each. 200 N.J. Super. at 32.
[2] The judgments of conviction and our opinion were simply treated as evidence of appellants' violations of N.J.S.A. 48:13A-10a and N.J.A.C. 14:3-10.12, not as a conclusive proof of such violations. Therefore, since the BPU did not rely upon principles of collateral estoppel in deciding this case, appellants' argument that the agency misapplied those principles is unfounded.
[3] We express no opinion concerning the correctness of the trial court's holding in State v. New Jersey Trading Waste Ass'n, supra.