unenforceable under the New Jersey Antitrust Act, *N.J.S.A.* 56:9–1 *et seq.*

The judgment is reversed. The matter is remanded to the Law Division for further proceedings consistent with this opinion.

NEWCOMB SALES AND SERVICES CORP., A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. NEW JERSEY STATE BOARD OF PHARMACY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 20, 1987—Decided June 5, 1987.

Before Judges FURMAN, SHEBELL and STERN.

*Harold B. Shapiro* argued the cause for appellant (*Shapiro & Shapiro*, attorneys, *Samuel L. Shapiro, Harold B. Shapiro* and *Sheri B. Silverstein*, on the brief).

*Kelly A. Lynch*, Deputy Attorney General, argued the cause for intervenor, Attorney General of New Jersey (*W. Cary Edwards*, Attorney General, attorney, *Andrea M. Silkowitz*, Deputy Attorney General, of counsel).

*Kenneth F. Hense* argued the cause for respondent (*McGlynn, Reed, Hense & Pecora*, attorneys).

The opinion of the court was delivered by

FURMAN, P.J.A.D.

Appeal is brought from the Board of Pharmacy's denial of a permit to Newcomb Sales and Service Corp. (Newcomb) to operate a pharmacy on the ground floor of Newcomb Hospital in Vineland. Both the applicant and the hospital corporation are wholly owned subsidiaries of Newcomb Health Services Corporation.

The decision below was contrary to the advice to respondent board from the Attorney General, who is its legal advisor and the head of the Department of Law and Public Safety, to which the various Professional Boards, including respondent board, are assigned within the Division of Consumer Affairs. The Attorney General appointed special counsel, pursuant to *N.J. S.A.* 52:17A–13, to represent respondent board on the appeal by Newcomb and intervened himself to urge a reversal.

According to the Attorney General's opinion to respondent board, its reasons for denying Newcomb's applications were "legally insufficient." We agree and reverse. Respondent board's premise, although tacit, in denying a permit to Newcomb was that a retail pharmacy should not be located within a hospital, an erroneous and untenable interpretation of governing law in our view, as well as in the Attorney General's view.

*N.J.S.A.* 45:14–33 mandates issuance of a pharmacy permit to any qualified person upon a showing that:

a. The management of the pharmacy is in personal and continuous charge of a pharmacist registered in accordance with the laws of this State.

b. The pharmacy for which the permit is sought will be conducted in full compliance with the law and with rules and regulations of the said board.

c. The location and facilities of said pharmacy are such that it can be operated and maintained without endangering the public health or safety.

d. The said pharmacy shall offer complete pharmaceutical service by compounding or dispensing all prescriptions which may reasonably be expected to be compounded or dispensed by the pharmacist; and

e. The said pharmacy shall not offer professional services under terms and conditions which tend to interfere with or impair the free and complete exercise of professional judgment and skill or enter into any agreement which denies the patient the right of free choice of pharmacies.

Respondent board set forth six reasons for its denial of Newcomb's application, all directly related to the proposed location of its pharmacy within Newcomb Hospital: (1) The location would result in an unfair competitive advantage for the pharmacy business of outpatients and discharged patients to the "detriment" of their freedom of choice; (2) There would be a potential for "inventory leakage" from Newcomb Hospital's institutional pharmacy, which holds an institutional permit under *N.J.S.A.* 45:14–32 to dispense drugs to inpatients and hospital employees; (3) There would be a potential for steering of patients by "professionals;" (4) The hospital's institutional pharmacy was found guilty of four violations in 1980; (5) There would be a potential for assignment of employees of the tax exempt hospital to work in the pharmacy, whenever pharmacy employees were sick or otherwise unavailable; and (6) Members of the general public might be unaware of the location of the pharmacy within the hospital, hence interfering with the pharmacy's rendering of "complete service to the community."

None of the six reasons set forth by respondent board in any way conflicts with or throws into question Newcomb's *prima facie* showing of compliance with the statutory standards for

granting pharmacy permits. The location of the pharmacy within a hospital would in no way endanger the public health or safety. Respondent board specifically urges only the danger of a violation of the prohibition in subsection e against entering into "any agreement which denies the patient the right of free choice of pharmacies." Palpably, no finding of such danger is supported on the record.

The possibility of violations envisioned by respondent board rests upon groundless speculation. Nothing in the record suggests that Newcomb would not comply with all statutory and regulatory requirements or that any violations, upon their occurrence, would not be policed and sanctioned by respondent board.

Outpatients and discharged patients would be free to order their drugs elsewhere, without coercion to do business only at the proposed pharmacy. The past record of a few violations by the hospital's institutional pharmacy, which led to a reprimand and $1,400 fine in 1980, in no way suggests that a retail pharmacy on the premises, run by a distinct corporate entity, would be violation prone at this time. Respondent board's concern that "complete service" would not be rendered to the community is likewise unfounded and conjectural.

*Packard Bamberger & Co., Inc. v. Board of Pharmacy,* 134 *N.J.L.* 381 (Sup.Ct.1946), aff'd, 135 *N.J.L.* 282 (E. & A.1947), is in accord, reversing the denial of a permit for a retail pharmacy within a department store. Justice Oliphant in the Supreme Court stated at 134 *N.J.L.* 383–384:

> The Pharmacy Act itself, *R.S.* 45:14–32, defines the words "pharmacy" and "drug store" as an "establishment or place of business which, under the provisions of this chapter, is required to be operated and managed at all times by a registered pharmacist." This language cannot be said to preclude a separate department in a general department store from being classed in such a category and in our judgment nothing in the entire act could lead to such a determination. It is common knowledge as well as disclosed by the record that many drug stores in this state are department stores to a greater or less

degree. By the action of the Board in this case it seeks to lay down a rule, not contemplated by statute or its own regulations, that one already holding a license or permit may expand his business into a department store but a department store once established cannot procure a permit for a drug store to be conducted as a separate department therein.

The defendant attempts to read into the act the inference that the statute contemplates the operation of "entire establishments as pharmacies and drug stores." This is an effort to set up an artificial and unreal classification to which neither the statute nor any rules or regulations of the Board lend substance.

It is asserted by defendant that because prosecutor closes its store at 6:00 P.M. on some days of the week, at 9:00 P.M. on others and that it is closed on Sundays and holidays sufficient service to the public could not be rendered. Again there is no rule or regulation of the Board and nothing contained in the statute which prescribes the hours during which a pharmacy shall be open, and again it is common knowledge that some drug stores now holding unlimited permits are closed at night, on Sundays and holidays.

Nothing appears in the record and we are unable to discern any reason, if a permit be granted prosecutor, that all statutory regulations and requirements cannot and will not be complied with.

Because we decide as we do that respondent board's reasons for denying Newcomb's application were legally insufficient, we need not consider the application of the presumption of validity either of administrative action, *Smith v. Ricci*, 89 *N.J.* 514, 525 (1982), *cert.* den., 459 *U.S.* 962, 103 *S.Ct.* 286, 74 *L.Ed.* 2d 272 (1982); *Henry v. Rahway State Prison*, 81 *N.J.* 571, 579–580 (1980), or of an administrative agency's interpretation of its statutory authority, *Metromedia, Inc. v. Director, Div. of Taxation*, 97 *N.J.* 313, 327 (1984).

*In the Matter of Anthony & Kearney Scioscia*, 216 *N.J.Super.* 644 (App.Div.1987), decided March 23, 1987, upon which respondent board relies, affirms the revocation of an operating certificate to engage in the solid waste business, based upon a criminal conviction. In our view *Scioscia* is plainly distinguishable and fails to support the denial below of Newcomb's application for a pharmacy permit.

We reverse.