**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2248-18T2

NEW JERSEY MOTOR
VEHICLE COMMISSION,

      Petitioner-Respondent,

v.

LARRY'S PROFESSIONAL
SERVICE CENTER, LLC,

      Respondent-Appellant.

_____

NEW JERSEY MOTOR
VEHICLE COMMISSION,

      Petitioner-Respondent,

v.

LARRY WILLIAMS,

      Respondent-Appellant.

_____

      Submitted February 3, 2020 – Decided February 26, 2020

      Before Judges Geiger and Natali.

On appeal from the New Jersey Motor Vehicle Commission.

John P. Grimes, attorney for appellants.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; David Michael Kahler, Deputy Attorney General, on the brief).

PER CURIAM

In these consolidated appeals, respondents Larry Williams (Williams) and Larry's Professional Service Center, LLC (the Facility) (collectively, respondents), appeal from a consolidated final decision of the New Jersey Motor Vehicle Commission (MVC) permanently revoking respondents' vehicle emissions testing licenses and imposing fines totaling $168,000. We affirm.

I.

Williams is the sole owner of the Facility and its only inspector licensed to perform motor vehicle inspections. The facility is licensed by the MVC to perform private inspections under N.J.A.C. 13:20-44.1 to -.26. After discovering respondents engaged in fraudulent testing, the Department of Environmental Protection alerted the MVC.

The MVC sent notices of violation that charged Williams with violating N.J.A.C. 13:20-43.18(f)(1) by "utiliz[ing] an alternate vehicle to obtain

emissions readings for [twenty-one] vehicles on which inspections were being conducted" while "fraudulently [and] improperly pass[ing] or waiv[ing] said vehicles."  The MVC also charged Williams with violating N.J.A.C. 13:20-43.18(f)(5) by "fraudulently affix[ing] certificates of approval to [twenty-one] vehicles that had not been subject to proper emissions inspections."  The MVC charged the Facility with violating N.J.A.C. 13:20-44.20(b)(1) (improperly passing a motor vehicle in an emission inspection); N.J.A.C. 13:20-44.20(b)(5) (fraudulently affixing a certificate of approval sticker); and N.J.A.C. 13:20-44.20(b)(6) (fraudulently conducting a licensed activity).

The MVC proposed permanently revoking Williams' emission inspector license and the Facility's private inspection license and imposing fines of $42,000 and $126,000 respectively.  In determining the proposed penalties, the MVC considered two prior matters in which respondents were charged with fraudulent testing: a thirty-seven-count charge in 2006 and a one-count charge in 2012.  The parties settled the 2006 and 2012 matters.

The 2006 matter was settled by a two-year suspension of the Facility's private inspection license with credit for time served, a $15,000 civil penalty, and a $100 restoration fee.  The settlement agreement stated Williams waived his rights to a hearing before an ALJ.

The 2012 matter was settled by a forty-four-day suspension of the Facility's emission inspection license, with credit for time served, a $1000 civil penalty, and a $100 restoration fee. The settlement agreement stated: "The [MVC] and Licensee hereby stipulate that this agreement shall fully dispose of all issues in controversy with regard to this matter, and disposes of Licensee's request for a hearing in this matter." It further stated Williams waived his rights to a hearing before an ALJ.

Respondents requested a hearing in this matter. The MVC transferred the matters to the Office of Administrative Law (OAL) as contested cases; the two matters were consolidated and assigned to an Administrative Law Judge (ALJ).

Following a hearing, the ALJ issued an October 1, 2018 initial decision, in which she found the testimony of the MVC's witnesses Robert J. Bascou and Jeff Kennedy credible but did "not accept Williams' testimony concerning the events at issue to be credible." The ALJ found:

> the evidence in the record supports the [MVC's] finding that the respondents . . . manipulated the [onboard diagnostic (OBD)] scan results of twenty-one vehicles by scanning other vehicles. For each of the twenty-one OBD scans at issue, there were multiple data points that are inconsistent with the data produced during prior scans of the same vehicles. Each category of data represented functions or features of the vehicles that are fixed and not changeable. Thus, every OBD scan of each of these vehicles should have produced the same

data for each of these categories every time the vehicle was scanned. Indeed, with extremely limited exceptions, they did produce the same data for every scan, except when inspected by the respondents. [T]he respondents' OBD scan equipment passed multiple audits, including two during the times at issue, and there [was] no other evidence suggesting a reasonable rationale for these discrepancies.

The ALJ concluded "the preponderance of the credible evidence in the record indicated that OBD scans for the twenty-one vehicles . . . were intentionally manipulated and that stickers were affixed on each vehicle to indicate it passed inspection." The ALJ determined the MVC met its burden of proof on each of the charges as to both respondents but recommended modified penalties.

Regarding the modified penalties, the ALJ rejected the MVC's contention that the 2006 and 2012 matters should be treated as prior violations. The ALJ noted those matters were resolved by settlement agreements that lacked any "specific language regarding liability," which "cautions against treating the settlements as prior violations." The ALJ explained:

Certainly, the [penalties] that resulted from the prior settlements would suggest that this would not be the first time respondents violated the scan laws. . . . The fact is we do not know the reason or reasons respondents accepted the prior settlements and waived their rights to a hearing. And that is why the fairest course is to exclude the prior settlements as evidence of

5

prior violations.  This would also comport with the public policy encouraging settlements.

The ALJ also disagreed with the MVC's interpretation of N.J.A.C. 13:19-1.2 that it was permitted to consider the factual allegations in the prior matters as violations because, in the settlement agreements, respondents had waived their right to contest the charges at a hearing.  The ALJ observed that while Williams was charged in the prior matters, only the Facility's license was suspended; thus, the present violations should be treated as William's first violation.

The ALJ found the following mitigating factors "warrant[ed] consideration of a lesser penalty":  Williams' age, the small size and limited income of the Facility, inspections constituted ninety-five percent of Williams' income, and respondents' licenses were preliminarily suspended pending the final outcome of charges.  The ALJ and recommended a two-year suspension of respondents' licenses, along with fines of $31,500 and $21,000 for the Facility and Williams respectively.  The MVC filed a letter of exceptions, contesting the ALJ's modified penalties.

On November 5, 2018, the MVC submitted a letter to the OAL, requesting a "[forty-five]-day extension of time for issuing the final decision due to the Commission's voluminous workload and a staff shortage/turnover."

A-2248-18T2

Respondents did not receive notice of the extension request.  The OAL approved the MVC's request, ordering "that the time limit for issuing the final decision [be] extended until December 31, 2018."

On December 14, 2018, the MVC issued its final decision that accepted and adopted "the factual findings and legal conclusions contained in the Initial Decision insofar as they relate to all but the penalty phase."  The MVC rejected the ALJ's modified penalties and instead imposed the originally proposed penalties—permanent revocation of respondents' licenses and fines of $42,000 for Williams and $126,000 for the Facility.

In reaching its decision, the MVC disagreed with the ALJ's ruling that the "2006 and 2012 violations could not be counted due to the settlements' failure to explicitly state that respondents admitted guilt or that the settlement agreements would be considered a prior violation for future cases."  The MVC determined that the 2006 and 2012 matters could be properly treated as prior violations because respondents waived their right to contest the charges in an administrative hearing, citing N.J.A.C. 13:20-44.22(b).  The MVC stated "[r]espondents agreed to accept the MVC's findings in those matters in exchange for a less severe penalty."  By doing so, "the allegations become a final decision."

7

The MVC concluded the "penalty should be considered as a third offense" because "ignoring the two previous incidents would be injurious to the public well-being," citing Vasquez v. Glassboro Service Association, Inc., 83 N.J. 86 (1980). The MVC noted the ALJ found that respondents' actions harmed the public health and the environment, and they profited from their actions while simultaneously deceiving their customers. The ALJ considered these to be aggravating factors that added to the gravity of the offenses.

Finally, the MVC found that even if it considered this matter a first offense, "the violations were egregious to the extent that the increased amount of the fines and permanent revocation would still be called for," citing N.J.S.A. 39:8-49 and 13:20-43.18(a). It reasoned that "[r]espondents were found to have willfully violated the regulations twenty-one separate times, thereby undermining protections impacting the public's safety, and justifying imposition of a higher penalty." This appeal followed.

Respondents argue: (1) the ALJ's decision must be reinstated and the MVC's final decision stricken because it was untimely; and (2) evidence of settlement agreements with no admission of fault are inadmissible to prove a prior violation to enhance a sentence.

II.

Our role in reviewing final agency determinations is "limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). When reviewing an agency's final determination, the appellate court is limited to considering whether "the agency follow[ed] the law," whether "the record contains substantial evidence to support the findings on which the agency based its action," and whether "the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Ibid. (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

"A reviewing court 'must be mindful of, and deferential to, the agency's expertise and superior knowledge of a particular field.'" Id. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (internal quotation marks omitted)). A reviewing court also "may not substitute its own judgment for the agency's, even though the court might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re Carter,

191 N.J. 474, 483 (2007)). However, an appellate court is not bound by an agency's interpretation of the law, which is reviewed de novo. Allstars Auto Grp., 234 N.J. at 158.

III.

Respondents assert that "[a]n extension of the time" for the MVC to issue its final decision "is an adjournment request," which "requires notice to the adversary to request consent before an application is made," citing N.J.A.C. 1:1-9.6. They contend "the unilateral extension requested by the [MVC] is void as violative of the Rules of Administrative procedure" because the MVC failed to provide proper notice. We disagree.

An agency head is required to render a final decision accepting, rejecting, or modifying an ALJ's recommendation within forty-five days, subject to extension for good cause. N.J.S.A. 52:14B-10(c); N.J.A.C. 1:1-18.6(a); N.J.A.C. 1:1-18.8(a), (e). Unless the agency head does so "within such period, the decision of the [ALJ] shall be deemed adopted as the final decision of the head of the agency." N.J.S.A. 52:14B-10(c); see also N.J.A.C. 1:1-18.6(e). An agency may request a single extension of the time period to issue a final decision for good cause. N.J.A.C. 1:1-18.8(a), (e). The extension request is forwarded to the Director of the OAL. N.J.A.C. 1:1-18.8(e). It "must be submitted no later

than the day on which that time period is to expire." N.J.A.C. 1:1-18.8(b). "Copies of [initial] extension requests no longer need be served on the parties." 37 N.J. Practice, Administrative Law and Practice § 6.19, at 88 (Patricia Prunty & Anthony Miragliotta) (2d ed. Supp. 2019) (citing N.J.A.C. 1:1-18.8). "Any additional request for an extension is contingent upon the unanimous consent of the parties. . . . First requests for extensions . . . are exempt from the requirement to obtain unanimous consent." N.J.A.C. 1:1-18.8(e).

Here, the initial decision was issued on October 1, 2018. The forty-five-day statutory period for the MVC to issue a final decision would have expired on November 15, 2018. Contrary to respondents' assertion, the MVC was not required to seek an adjournment under N.J.A.C. 1:1-9.6, which does not address final agency decisions. Rather, the MVC was required to seek an extension in accordance with N.J.S.A. 52:14B-10(c) and N.J.A.C. 1:1-18.8; it did.

On November 5, 2018, the MVC timely submitted a letter to the OAL, requesting its first "[forty-five]-day extension of time for issuing the final decision due to [its] voluminous workload and a staff shortage/turnover." Because it was the MVC's first extension request, respondents' consent was not required. N.J.S.A. 52:14B-10(c); N.J.A.C. 1:1-18.8(e). The OAL approved the MVC's request and, pursuant to N.J.S.A. 52:14B-10(c) and N.J.A.C. 1:1-18-8,

ordered "that the time limit for issuing the final decision [be] extended until December 31, 2018." The MVC issued its final decision on December 14, 2018. Accordingly, the MVC properly requested and received an extension to issue its final decision and issued its final decision within the extended period.

IV.

Respondents argue the MVC improperly considered the 2006 and 2012 as prior violations matters in setting the penalties to be imposed because those matters were resolved by settlement agreements that did not include an admission of wrongdoing.

An agency "has broad discretion in determining the sanctions to be imposed for a violation of the legislation it is charged with administering." In re Scioscia, 216 N.J. Super. 644, 660 (App. Div. 1987) (citing Knoble v. Waterfront Comm'n of N.Y. Harbor, 67 N.J. 427 (1975)). Our deferential standard for reviewing agency actions "applies to the review of disciplinary sanctions as well." In re Herrmann, 192 N.J. 19, 28 (2007). Thus, our "review of an agency's choice of sanction is limited." In re License Issued to Zahl, 186 N.J. 341, 353 (2006). It is not our place to second-guess or substitute our judgment for that of the agency and, therefore, we do no "engage in an independent assessment of the evidence as if [we] were the court of first

12

instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "Deference is appropriate because of the expertise and superior knowledge of agencies in their specialized fields and because agencies are executive actors." Zahl, 186 N.J. at 353 (citations and internal quotation marks omitted). A reviewing court will modify a sanction "only where it is satisfied that the agency has mistakenly exercised its discretion or misperceived its own statutory authority." Id. at 353-54 (quoting In re Polk License Revocation, 90 N.J. 550, 578 (1982)). We review administrative sanctions to determine "whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Herrmann, 192 N.J. at 28-29 (quoting Polk, 90 N.J. at 578).

The MVC may suspend or revoke the license of an emission inspector or a private inspection facility for fraudulent testing. N.J.S.A. 39:8-49(a)(2) & -52(b)(2); N.J.A.C. 13:20-43.18(a)(1) & -44.20. The regulations provide penalty schedules for violations, which may result in enhanced penalties depending on whether the respondent has prior violations. N.J.A.C. 13:22-44.18 and -44.20. The following are the potential penalties respondents faced.

For improperly passing a motor vehicle in an emission inspection, respondents each faced: a six-month license suspension plus a $500 fine for

Williams and a $1000 fine for the Facility (first violation); a two-year suspension plus a $1000 fine for Williams and a $5000 fine for the Facility (second violation); and a lifetime license revocation plus a $2000 fine for Williams and a $7500 fine for the Facility (third violation). N.J.A.C. 13:20-43.18(f)(1) & -44.20(b)(1).

For fraudulently affixing a certificate of approval, respondents each faced: an immediate two-year license suspension plus a $500 fine (first violation); a four-year license suspension and a $1000 fine (second violation); and a lifetime license revocation plus a $2000 fine (third offense). N.J.A.C. 13:20-43.18(f)(5) and 44.20(b)(5). For fraudulently conducting a licensed activity, the Facility faced: an immediate two-year license suspension for a first violation; a four-year license suspension for a second violation; and a lifetime license revocation for a third violation. N.J.A.C. 13:20-44.20(b)(6).

Nevertheless, irrespective of whether a respondent has prior violations, the MVC may permanently revoke a license for good cause. N.J.S.A. 39:8-49(a)(9) & -52(b)(7); N.J.A.C. 13:20-43.18(a)(7) & -44.20.

The MVC considered the 2006 and 2012 matters and permanently revoked respondents' licenses and fined Williams $42,000 and the Facility $126,000. Still, the MVC found that even if it considered the present matter as respondents'

14

first violation, "the violations were egregious to the extent that the increased amount of the fines and permanent revocation would still be" warranted, citing N.J.S.A. 39:8-49 and N.J.A.C. 13:20-43.18(a). The MVC noted "[r]espondents were found to have willfully violated the regulations twenty-one separate times, thereby undermining protections impacting the public's safety, and justifying imposition of a higher penalty."

We disagree with respondents' argument that the 2006 and 2012 matters could not be considered by the MVC in assessing sanctions. The settlement agreements did not state the settlements were a resolution of a disputed allegation without any admission of wrongdoing. As part of the settlements, respondents waived their right to a hearing before an ALJ. Both settlements imposed license suspensions and fines.

Moreover, each of the twenty-one incidents charged involved discrete actions affecting different vehicles, not ongoing continuous conduct without interruption. Accordingly, they each constituted a separate violation. See In re Fiorillo Bros. of N.J., Inc., 242 N.J. Super. 667, 673, 686-87 (App. Div. 1990) (finding that improperly disposing 323 truckloads of trash represented separate regulatory violations rather than one violation considering the discrete interruptions between violations).

We discern no abuse of discretion by the MVC even if we do not consider the 2006 and 2012 matters. The record fully supports the MVC's conclusion that respondents' willful and repetitive violations for profit, involving twenty-one vehicles—which impacted public safety and the environment—were egregious. The increased fines and permanent revocation imposed are not so disproportionate to the offenses that they shock one's sense of fairness.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2248-18T2