**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2686-20

IN THE MATTER OF
ADRIAN FIGUEROA, JR.,
CAMDEN COUNTY,
DEPARTMENT OF PARKS.

_____

Argued May 16, 2022 – Decided August 16, 2022

Before Judges Accurso and Enright.

On appeal from the New Jersey Civil Service Commission, Docket No. 2020-804.

James Katz argued the cause for appellant Adrian Figueroa, Jr. (Spear Wilderman, PC, attorneys; James Katz, on the briefs).

Howard L. Goldberg, First Assistant County Counsel, argued the cause for respondent Camden County, Department of Parks (Emeshe Arzón, Camden County Counsel, attorney; Howard L. Goldberg and Ilene M. Lampitt, Assistant County Counsel, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Adrian Figueroa, Jr. appeals from the April 28, 2021 final administrative decision of the Civil Service Commission (CSC) summarily adopting the findings of fact and conclusions of law in an Administrative Law Judge's initial decision and affirming his removal from employment with respondent Camden County Parks Department (Department). Because we conclude the CSC's decision rested on facts not supported by sufficient, credible evidence in the record, we vacate the April 28 decision and remand for further proceedings.

I.

Figueroa was employed as a laborer with the Department between 2013 until 2018. His duties included maintenance, landscaping, trash collection, and setting up and dismantling structures for events, such as concerts or fairs. Although Figueroa's duties did not include interfacing with the public, members of the public could interact with him because he would wear a County shirt and drive a County vehicle during work hours. Figueroa and other laborers often worked without supervision or a partner.

On December 18, 2018, Figueroa was arrested on a charge of second-degree sexual assault, N.J.S.A. 2C:14-2, and remained incarcerated for a few days. On December 19, 20 and 21, 2018, an unidentified caller informed the

Department Figueroa was sick and would not be at work; the Department was unaware of Figueroa's pending charge or incarceration at that point.

Days later, when the County learned of Figueroa's incarceration, it served Figueroa with a preliminary notice of disciplinary action (PNDA), seeking his immediate suspension pursuant to N.J.A.C. 4A:2-2.5(a) and 4A:2-2.7(a).[1] The County also sought forfeiture due to Figueroa's pending charge, per N.J.S.A. 2C:51-2.[2] The following month, the County issued a Final Notice of Disciplinary Action (FNDA), seeking Figueroa's continuing suspension until disposition of his criminal charge.

---

[1] Under N.J.A.C. 4A:2-2.5(a)(2), "[a]n employee may be suspended immediately when the employee is formally charged with a crime of the first, second or third[-]degree, or a crime of the fourth[-]degree on the job or directly related to the job"; additionally, N.J.A.C. 4A:2-2.7(a) provides, in part, "[w]hen an appointing authority suspends an employee based on a pending criminal complaint or indictment, the employee must be served with a Preliminary Notice of Disciplinary Action."

[2] Under N.J.S.A. 2C:51-2(a)(1) and (2), any "person holding any public . . . position, or employment . . . who is convicted of an offense shall forfeit such . . . position or employment if" that person is "convicted . . . of an offense involving dishonesty or of a crime of the third[-]degree or above or . . . convicted of an offense involving or touching such . . . position or employment."

A-2686-20

In July 2019, Figueroa pled guilty to harassment, N.J.S.A. 2C:33-4(b),[3] a petty disorderly persons offense, in exchange for dismissal of the second-degree sexual assault charge.[4] The sentencing judge imposed a fine and a one-year probationary term; the probationary term ended upon Figueroa's prompt payment of the fine.

Nine days after Figueroa pled guilty to harassment, the County issued a new PNDA, charging him with conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6),[5] and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12),[6]

---

[3] Pursuant to N.J.S.A. 2C:33-4(b), "a person commits a petty disorderly persons offense of harassment if, with purpose to harass another," the person "[s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so."

[4] Figueroa's plea to a petty disorderly persons offense eliminated his potential forfeiture of employment under N.J.S.A. 2C:51-2(a)(1).

[5] Our Supreme Court has held the phrase "conduct unbecoming a public employee" does not require the "'violation of any particular rule or regulation, but may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct.'" Karins v. City of Atl. City, 152 N.J. 532, 554 (1998) (quoting Hartmann v. Police Dep't of Vill. of Ridgewood, 258 N.J. Super. 32, 40 (App. Div. 1992)).

[6] "Other sufficient cause" constitutes "a true 'catch-all' provision, allowing discipline" under the Code. McLaughlin, N.J. Pub. Educ. Emp. & Civ. Serv. L. § 25:2-2 (2022). See e.g., Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 581 (1963).

A-2686-20

seeking his immediate removal. During a subsequent departmental hearing, an independent hearing officer recommended Figueroa's removal, effective immediately. Figueroa appealed the decision.

In August 2019, the County issued a new FNDA, removing Figueroa from his position as a laborer, based on his guilty plea to harassment. The FNDA charged Figueroa with conduct unbecoming and other sufficient cause. In a section of the FNDA entitled, "Incident(s) giving rise to the charge(s) and the date(s) on which it/they occurred," the following description appeared:

> On or about December 18, 2018[,] you were arrested based upon allegations of sexual assault. You were charged with [N.J.S.A.] 2C:14-2C(1)[,] a second [-]degree crime. You did not notify the County of your arrest. On December 19 and 20, 201[8] you had someone call you out of work sick. On July 10, 2019, you ple[d] guilty to [N.J.S.A.] 2C:33-4[(b)] Harassment - offensive touching.
>
> Therefore, N.J.A.C. 4A:2-2.5 (a) (1) authorizes that "an employee may be suspended immediately and prior to a hearing when it is determined that the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services."

Notably, the FNDA did not separately charge Figueroa with misusing sick time nor did it refer to any underlying facts relative to his plea to harassment.

Figueroa appealed his removal to the CSC; the agency referred the matter to the Office of Administrative Law, and an Administrative Law Judge conducted a virtual hearing on December 10, 2020.

Josie Gambale, the Department's Senior Data Clerk in December 2018, was the first witness to testify for the Department. She described receiving a voicemail on December 19, 2018, confirming Figueroa was out sick. According to her documentation, Figueroa also was "out sick" on December 20 and 21, 2018. Gambale stated she did not speak with Figueroa on the days he was marked out as sick and did not "know who reported [him] out sick." She admitted she had no "information that either . . . Figueroa personally called out sick" or "requested somebody to call [him] out sick." Gambale stated that because Figueroa was marked as being sick from December 19 to December 21, "he would have been paid sick." She did not recall revising Figueroa's sick leave designation once she learned he was incarcerated, rather than ill, during this three-day period.

Magdalene McCann Johns, Director of the Department, testified about Figueroa's job duties and stated it was possible for him to interact with members of the public. She said at times, he would be working "alone in the park." Further, she explained "laborers often . . . are picking up trash and doing various

A-2686-20

activities as a solo job" so Figueroa "could be out in the field by himself with . . . no supervisor." McCann Johns never witnessed Figueroa interact with the public, nor did she ever receive complaints from the public about him or his conduct.

According to McCann Johns, Figueroa had a disciplinary history predating her employment as Director of the Department. But after she assumed this role, she was unaware of "any problems with his interaction with other employees." McCann Johns also stated she did not "have any information about the facts related to the incident to which . . . Figueroa pled guilty . . . [o]ther than that he was arrested and put in jail for something."

Emeshe Arzon, the County's former Human Resources Director, also testified for the Department. She stated when she was the County Human Resources Director, she was responsible for "hiring, firing, promotions, policies, things of that nature."

According to Arzon, she had no personal knowledge of the facts related to Figueroa's guilty plea to harassment, but she had seen the December 2018 criminal complaint charging him with second-degree sexual assault. Arzon testified that following Figueroa's arrest in December 2018, "[t]he County immediately suspended . . . Figueroa pending the outcome of the criminal

charge[]" and informed him "there was a possible forfeiture of his position based on the pending charge[]." She also remembered Figueroa had a disciplinary history based on a prior determination he engaged in conduct unbecoming a public employee.

Arzon did not believe "the mere guilty plea to a [petty disorderly persons offense] . . . constitutes conduct unbecoming a public employee and is grounds for termination." Further, she confirmed Figueroa's plea was not subject to the forfeiture statute and his removal was not sought under that statute. But asked if "the County's position is that . . . harassment, offensive touching is conduct unbecoming a public employee," Arzon answered affirmatively.

According to Arzon, Figueroa was "marked sick" for December 19, 20, and 21, 2018. She was "not sure" "if Figueroa had someone call him out sick for those dates." Arzon recalled receiving a phone call in December 2018, alerting her to the fact Figueroa was incarcerated during this period. She noted, "[t]he [Department's] sick leave policy is to take sick time when you are actually sick or to go to a doctor's appointment."

During Arzon's testimony about the County's sick leave policy, Figueroa's attorney raised an objection. He stated, "there's been an extraordinary amount of questioning in this case regarding the County sick leave policy and what

happened," even though the FNDA "include[d] no reference to any violation of the County sick leave policy." Counsel continued,

> what happened on [December] 19th, 20th and 21st . . . is clearly out of bounds; the County is bound by the [FNDA] that was issued in . . . August of 2019 and [can]not expand the charges before you from that document, and I'm going to move that all of this . . . be excluded.

In response, the ALJ stated,

> [t]he only thing I ever consider is the FNDA, period, . . . because there is a significant due process consideration and I take that . . . very, very seriously. . . . All I'm concerned with is conduct unbecoming and other sufficient cause, period. [Counsel's] objection is sustained.

When Figueroa's counsel asked if the judge meant he would not consider an alleged violation of the County's sick policy in his decision and counsel would not "have to ask [the] witnesses about it," the judge responded, "[i]t can't be. . . . It's not fair." Referencing the judge's ruling, County counsel spoke to Figueroa's counsel directly, stating, "He's agreeing with you and I think you can stop asking the questions." The ALJ concurred and reiterated, "it's just simply not fair . . . and I will take that to the nth degree."

Figueroa's counsel lodged another objection when the County sought to admit into evidence the December 2018 criminal complaint against Figueroa.

Counsel argued the complaint contained hearsay and none of the County's witnesses had "any personal knowledge about any of the facts in relationship to that complaint." He also contended the complaint was not relevant because the "original complaint was ultimately downgraded and dismissed," and "the prejudice [in admitting the complaint] far outweigh[ed its] probative value." The judge rejected the notion the complaint was inadmissible but stated he could "redact out" portions of the document that were hearsay, observing, "there's no jury here."

The final witness to testify was Figueroa's criminal defense attorney, Jeffrey Zucker. Zucker stated the petty disorderly persons offense to which Figueroa pled guilty "is not a crime in New Jersey," but rather a "quasi-criminal offense" and the offense was "not at all" related to Figueroa's work as a laborer for the County. On recross-examination, Zucker acknowledged it was his "understanding" Figueroa pled guilty to having "continually bumped, touched or harassed [his] victim."

The ALJ issued a written decision on March 23, 2021, sustaining the charges of conduct unbecoming and other sufficient cause. At the outset of his opinion, the judge noted that during the hearing, it was established

> the County did not include the County Sick Policy in
> the enumerated charges, however, in the "incidents

A-2686-20

> giving rise section of the FNDA[,]" it was discussed as a reason for [Figueroa's] disciplinary charges. <u>In its closing summations . . ., respondent inappropriately requests that the sick time policy be included in this decision. . . . However, aside from the obvious procedural and constitutional arguments, the undersigned will not consider any charge that is not enumerated in the FNDA</u>.
>
> [(Emphasis added).]

Turning to his credibility findings, the ALJ concluded "respondent's witnesses [were] especially credible and persuasive" and "they all had concerns about these incidents and the safety and sanctity of the individuals working in the Parks Department and Camden County." The ALJ also credited Zucker's testimony.

Next, the judge found Figueroa's initial charge in December 2018 "gave rise to this appeal" but Figueroa "pled guilty to a downgraded charge of . . . harassment, offensive contact." Pertinent to this appeal, the ALJ found, too, that "Figueroa used sick time to attend several court hearings."

Based on these and other findings, the ALJ concluded the Department "sustained charges of violations of . . . conduct unbecoming, and . . . other sufficient cause." He explained:

> It is difficult to contemplate a more basic example of conduct that could destroy public respect in the delivery of governmental services than the image of

11

a Department of Parks employee committing a harassment-related contact offense against another individual. And, on top of that, using his sick time to attend the hearings. In this day and age of transparency, it is clear that Figueroa's conduct can adversely affect morale or efficiency and can destroy the public's respect for governmental employees and confidence in the operation of public services.

[Figueroa] argued that the conduct giving rise to the disciplinary action taken by the County occurred while he was off duty, with someone he knew, and that he did not tell the woman that he was a County employee and that for these reasons the County does not have the authority to remove him. That argument is without merit. Irrespective of the gradation of the charge, it is the fact that he ple[d] guilty to the harassing offensive contact. The inkling that behavior of this nature is acceptable is reprehensible. Also, to use sick time for any other purpose other than a medical reason, let alone a court date, is not appropriate. Despite [Figueroa's] narrow view of the rules of evidence . . . and without considering the affidavits of probable cause from the complaint of the underlying charge, I CONCLUDE that [Figueroa's] actions in harassing behavior and using sick time constitutes unbecoming conduct because they are that egregious. The charge of violating N.J.A.C. 4A:2-2.3(a)(6) is hereby SUSTAINED.

[(Emphasis added).]

Additionally, the ALJ found the Department "met its burden of proof in establishing a violation of other sufficient cause by a preponderance of the credible evidence." Without specifying a particular act of misconduct

12

committed by Figueroa to sustain the charge, the ALJ stated Figueroa "conducted himself in a manner that violated standards of good behavior and the higher level of conduct that is expected of him as an employee of the . . . Department." In an apparent effort to clarify the basis for upholding the charge of other sufficient cause, the judge added, Figueroa's "actions were a clear violation of criminal law because the N.J.S.A. 2C:33-4(b) charge is enumerated in the New Jersey Code of Criminal Conduct. Employees of county government should not be engaged in any criminal activity period."

Finally, in addressing the appropriate penalty to be imposed for the sustained charges, the ALJ found Figueroa's

> disciplinary record was not unremarkable. . . . [Figueroa] has been disciplined for conduct unbecoming a public employee in the past. [In] February . . . 2014, . . . [Figueroa] received a three-day minor suspension for incompetency, inefficiency or failure to perform duties (N.J.A.C. 4A:2-2.3(a)[(l)]), and conduct unbecoming a public employee (N.J.A.C. 4A:2-2.3(a)[(6)]). [Figueroa] used excessive force while cleaning off the windshield of his truck which caused the windshield to shatter and he transmitted the following message to every employee in the Public Works Department . . .: "You have to be white to get a new vehicle around here." [I]n December . . . 2015, . . . [Figueroa] was charged with conduct unbecoming a public employee . . . ; other sufficient causes . . . , Camden County Policy #401 authorized use of County vehicles, and Camden County Policy #34.0 changing

13

vital information. The parties ultimately settled the matter and [Figueroa] served a four-month suspension.

Here, Figueroa harassed and acted with the intent to harass and intentionally touch[ed] another person in an offensive manner. The actions of committing the criminal harassment and using sick time to attend court appearances certainly constitutes misconduct that is so severe; that it is unbecoming to the employee's position; and that renders the employee unsuitable for continuation in the position. . . . I am compelled to CONCLUDE that the respondent has proven, by a preponderance of credible evidence, that [Figueroa] engaged in conduct so egregious that application of progressive discipline is not appropriate. I FURTHER CONCLUDE that respondent presented the basis for [Figueroa's] removal from employment, and that such a removal should be AFFIRMED.

[(Emphasis added).]

Approximately one week later, Figueroa filed exceptions to the March 23 decision. On April 28, 2021, the CSC summarily affirmed the initial decision, triggering this appeal.

II.

Figueroa raises the following points for our consideration:

POINT I – IN TERMINATING FIGUEROA, A LABORER FOR FIVE YEARS, FOR USING SICK TIME TO ATTEND COURT HEARINGS, A CHARGE NEVER ALLEGED IN THE FNDA, TESTIFIED TO AT THE HEARING AND ADDRESSED IN THE COUNTY'S CLOSING STATEMENT, AND PLEADING GUILTY TO A

14

PETTY DISORDERLY PERSONS OFFENSE RELATING TO PRIVATE OFF-DUTY CONDUCT, ABSENT ANY NEXUS TO HIS DUTIES OR JOB RESPONSIBILITIES, THE CSC DECISION IS ARBITRARY, CAPRICIOUS AND VIOLATIVE OF DUE PROCESS.

A. In terminating Figueroa for using sick time to attend court hearings, a charge not included in the FNDA, alleged by the County, testified to at the hearing or addressed in the Employer's brief, the CSC's decision is arbitrary, capricious, and violative of due process.[7]

B. The ALJ's holding that pleading guilty to N.J.S.A. 2C:33-4[(b)], a petty disorderly persons offense, absent any nexus to Figueroa's job as a laborer, constitutes conduct unbecoming a public employee and other sufficient cause, is arbitrary and capricious.

C. The ALJ's admission into evidence and reliance upon the original criminal complaint in support of Figueroa's removal was arbitrary and capricious, as the complaint was inadmissible hearsay under the residuum rule, and neither the complaint nor its allegations may be relied upon.

D. The CSC's decision that Figueroa's conduct was egregious that progressive discipline is not appropriate was arbitrary and capricious.

E. This Court must reinstate Figueroa rather than remand to the CSC for redetermination.

---

[7] We have omitted Figueroa's original Point IA. argument which merely set forth the phrase, "Standard of Review."

Established precedents guide our task on appeal. Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007) (citing In re Carter, 191 N.J. 474, 482 (2007)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Id. at 27-28 (citing Campbell, 39 N.J. at 562). The burden of proving a decision was arbitrary, capricious, or unreasonable is on the party challenging the agency action. Lavezzi v. State, 219 N.J. 163, 171 (2014) (citing In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

When reviewing an agency decision, we examine:

> (1) whether the agency's action violates express or implied legislative policies . . .;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

Where an agency's decision satisfies these criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, recognizing "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We will not substitute our judgment for the agency's even though we might have reached a different conclusion. Stallworth, 208 N.J. at 194 (citing Carter, 191 N.J. at 483). Additionally, we give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). However, we review legal questions de novo. Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 55 (2022) (citing Brennan v. Bergen Cnty. Prosecutor's Off., 233 N.J. 330, 339 (2018)).

Our deference to agency decisions "applies to the review of disciplinary sanctions as well." Herrmann, 192 N.J. at 28 (citing Knoble v. Waterfront Comm'n of N.Y. Harbor, 67 N.J. 427, 431-32 (1975)). "In light of the deference owed to such determinations, when reviewing administrative sanctions, the test . . . is whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 28-

17

29 (alteration in original) (internal citations and quotation marks omitted); see also In re Restrepo, 449 N.J. Super. 409, 426 (App. Div. 2017).

Applying these principles, we are constrained to vacate the CSC's determination that Figueroa should be removed from employment based on sustained charges of conduct unbecoming a public employee and other sufficient cause. We reach this determination because the CSC summarily affirmed the ALJ's findings and conclusions even though he mistakenly found Figueroa "used sick time to attend several court hearings" and "use[d] sick time to attend court appearances." Our review of the record persuades us there was no testimony or evidence produced during the administrative hearing to support those findings. And while the Department's witnesses confirmed they knew Figueroa was "marked sick" after an individual contacted the Department to call Figueroa out sick when he was incarcerated, they did not testify they: spoke with Figueroa while he was incarcerated; were able to identify the person who left a voicemail to have Figueroa marked sick; or knew Figueroa asked someone to call him out sick for the days at issue.

We also are somewhat perplexed by the ALJ's multiple references to Figueroa's misuse of sick time in his decision, not only because the judge's opinion chastised the Department for "inappropriately request[ing] that the sick

18

time policy be included in this decision," but because the judge assured Figueroa's counsel during the administrative hearing that Figueroa's alleged misuse of the Department's sick policy would not be considered, given the charge was omitted from the August 2019 FNDA.

Further, because the ALJ mistakenly found Figueroa "used sick time to attend several court hearings" and misused sick time "to attend hearings" while he was incarcerated, and the ALJ also concluded the "use of sick time for any other purpose other than a medical reason, let alone a court date, is not appropriate," we are unable to divine if the judge would have sustained the conduct unbecoming charge absent his reliance on these mistaken findings.

Similarly, given the ALJ determined the Department proved Figueroa's "conduct in this case violate[d] the implicit standard of good behavior . . . [and] establish[ed] a violation of other sufficient cause," without identifying the nature of the offensive conduct referenced, we cannot discern whether Figueroa's alleged misuse of the Department's sick time policy played a part in the judge finding the Department proved the charge of other sufficient cause.

Additionally, the underlying basis for the ALJ's conclusion that progressive discipline was inappropriate and Figueroa's employment with the Department should end suffers from the same infirmity. Indeed, the ALJ made

19

clear he found Figueroa's removal from his position was warranted because his "actions of committing the criminal harassment <u>and using sick time to attend court appearances</u> certainly constitutes misconduct that is so severe . . . that renders [him] unsuitable for continuation in the position." (Emphasis added).

Given the CSC did not address the ALJ's erroneous findings regarding Figueroa's misuse of sick time to attend court hearings, but instead fully "accepted and adopted" the judge's findings of fact and conclusions of law, we are compelled to vacate the agency's final decision and remand this matter for further proceedings. We express no opinion on whether charges for conduct unbecoming and other sufficient cause can be sustained on remand, but given the representations made to Figueroa's counsel during the administrative hearing, we are satisfied any future disposition of the charges should be made without reference to any alleged violations of the Department's sick time policy.

Considering this outcome, we need not address Figueroa's contention that the ALJ's failure to apply progressive discipline was reversible error. It is sufficient to note that progressive discipline can be waived if

> the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when [its] application . . . would be contrary to the public interest.

Thus, progressive discipline has been bypassed when an employee engages in severe misconduct, especially when the employee's position involves public safety and the misconduct causes risk of harm to persons or property.

[Hermann, 192 N.J. at 33.]

Additionally, "past misconduct can be a factor in the determination of the appropriate penalty for present misconduct." Id. at 29 (citing W. New York v. Bock, 38 N.J. 500, 522 (1962)). As we have discussed, here, Figueroa had a disciplinary history predating his most recent charges.

Finally, because we have vacated the CSC's final agency decision, we do not consider Figueroa's final argument that he should be reinstated rather than have his matter remanded. To the extent we have not addressed any of his remaining contentions, we are satisfied they are without merit. R. 2:11-3(e)(1)(E).

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2686-20